**SCHARF v. WEINFELD & KAHN, Inc.**

**SAME v. UMBRELLA TIP–ON CORPORATION.**

**SAME v. WEINFELD & KAHN, Inc., et al.**

District Court, S. D. New York.
Feb. 23, 1940.

Blair, Curtis, Dunne & Hayward, of New York City (Daniel L. Morris, John C. Blair, and James L. Black, Jr., all of New York City, of counsel), for plaintiff.

Kamerman & Witkin, of New York City (J. T. Basseches and J. I. Weinfeld, both of New York City, of counsel), for defendants.

WOOLSEY, District Judge.

For the reasons, hereinafter outlined,. my judgment in these three causes is—

█ 1. (a) That I hold valid but not infringed Claims Nos. 1, 2, 15, 16, 17 and 18 of United States Patent No. 1,719,785, for a "Sewing Machine".

█ (b) That I hold valid and infringed Claim No. 42 of United States Patent No. 1,727,908, for a "Sewing Machine".

█ (c) That I hold valid and infringed Claims Nos. 2, 3, 4, 5, 6 and 7 of United States Patent No. 1,798,110, for a "Method of Making Umbrellas" and

█ (d) That I hold valid and infringed Claims Nos. 1, 2, 3, 6, 10 and 11 of United States Patent No. 1,994,406, for a "Machine for Sewing Fabric to Umbrella Tips."

2. That the counter-claim of the defendants for declaratory judgment in each suit be and they hereby are dismissed.

3. That, accordingly, there should be an interlocutory judgment for the plaintiff in each of these causes providing for the usual injunction, carrying costs and all taxable disbursements and allowances, and referring the causes to a special master who must be instructed to report severally in the three causes to this Court, with all convenient speed, on the damages suffered by the plaintiff and the profits made by the defendants by reason of such infringements of the patents above named as I have found.

I. My subject matter jurisdiction in respect of the plaintiff's suits is based on the Patent Law, Cf. Title 28 United States

Code, Section 41(7), 28 U.S.C.A. § 41(7), and in respect of the defendants' counter-claim under the Declaratory Judgment Act, Title 28 United States Code, Section 400, 28 U.S.C.A. § 400.

There is not any question of venue herein, and I find that there is not any question of the locus standi of the plaintiff to maintain these suits.

From about September 18, 1933 to March 18, 1938, the defendant Weinfeld & Kahn, Inc., was a licensee of the plaintiff or of a corporation which was wholly owned by the plaintiff and acted as his agent in licensing users of his patents.

About March 18, 1938, the said defendant gave up its license from Scharf, and now appears in the new role of an unlicensed user of patents to which for years 'it paid the tribute of royalties.

The questions here involved, as to the three machine patents, are whether this change of attitude is justified by a proper construction of the validity of said patents, or whether, if those patents are valid, the defendants' acts are outside of the ambit of the patent monopoly, for both the validity of the machine patents and the infringement thereof are, as I understand, contested by the defendant.

As to the method patent, however, the question of validity only is involved, for infringement is admitted if that patent is valid.

II. In view of Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is now a work of supererogation to write a detailed opinion on the facts or the law in a non-jury cause or proceeding, for its place will be taken by formal findings of fact and conclusions of law separately stated.

In this somewhat complicated proceeding, therefore, I will confine myself to finding such facts as I think explain my decision, and to giving a statement of my conclusions of law thereon.

The facts which I find must be supplemented by other facts proposed by the plaintiff when he submits—in the method hereinafter prescribed—his findings of fact and conclusions of law to be approved and signed by me.

III. I have before me in these three causes, which involve the same parties and substantially similar issues, four hitherto unadjudicated patents, issued to the plaintiff Scharf who claims infringement—either direct or contributory—of all said patents by Weinfeld & Kahn, Inc., and by Umbrella Tip-On Corporation.

The first suit, which was filed on April 28, 1938, is against the corporation Weinfeld & Kahn, Inc., which is alleged to be direct infringers of machine patent No. 1,994,406, and of method patent No. 1,798,-110; the charge of infringement, in so far as it pertains to the machine patent, being based on the use of the sewing machine made by the defendant.

The second suit, which was filed on August 23, 1938, is only against the manufacturer of what we have called the defendant's sewing machine, namely, Umbrella Tip-On Corporation, which is alleged to be a direct and contributory infringer of machine patent No. 1,994,406, and a contributory infringer of method patent No. 1,798,110, because the infringing machine is used to carry out some of the steps of the method patent.

The third suit, which was filed on February 9, 1939, is against both defendants, alleging them both to be direct infringers, and defendant Umbrella Tip-On Corporation also to be a contributory infringer of two additional machine patents No. 1,-719,785 and No. 1,727,908, the charge of infringement being based upon the use and manufacture of the Umbrella Tip-On Corporation's sewing machine.

In each of the suits there have been filed counter-claims praying for a declaratory judgment that the patents are invalid and not infringed.

IV. The following schedule shows that for a long period all four Scharf patents were co-pending in the Patent Office:

| Patent | Applied For | Granted |
|---|---|---|
| Scharf Patent No. 1,719,785. Called at trial and hereinafter First Machine Patent | May 5, 1926 | July 2, 1929 |
| Scharf Patent No. 1,727,908. Called at trial and hereinafter Second Machine Patent | February 4, 1927 | September 10, 1929 |
| Scharf Patent No. 1,798,110. Called at trial and hereinafter Method Patent | Originally applied for with preceding patent on Feb. 4, 1927, and later divided and second application made May 6, 1929 | May 24, 1931 |
| Scharf Patent No. 1,994,406. Called at trial and hereinafter Third Machine Patent | July 7, 1928 | March 12, 1935 |

I think that the relation between the three machine patents referred to in this schedule may be appropriately described somewhat as follows:

That the first Scharf machine patent may be looked at as a broad patent which disclosed the first machine made for stitching an umbrella cover to the tip of an umbrella rib by passing the thread through the eye of the rib and through the cover and then to both sides of the rib. It does not seem to me to be of much current value because of changes in the art hereinafter mentioned.

That the second Scharf machine patent may be regarded as a patentable improvement over the first, made to meet a new development in the art of umbrella making consequent on the increasing use of separate—usually ornamental—tips for the ribs of umbrellas, which necessarily required a new type of work-holder to ensure that the tip and the cover would be firmly held together whilst the cover was wrapped about it for stitching.

That the third Scharf machine patent may be looked at as fairly covering the present commercial machine made by the plaintiff.

That each of these succeeding patents involved such an improvement—slight though it was—over its predecessor as to entitle Scharf to the status of an inventor in respect of such improvement.

That as the applications for the patents were co-pending in the Patent Office, under authority to be immediately cited the order in which the patents issued was immaterial, and

That, despite the certain differences in structure and operation between the embroidery machine chassis and the Singer sewing machine chassis, all the claims of the patents here relied on might have been included in the third patent with, perhaps, some amendments in the specifications thereof.

V. As is usual in causes involving several patents there is quite a bit of underbrush to be cut and cleared away before proceeding to deal with the principal issues.

For example—

■ 1. There was not—as the defendants somewhat half-heartedly, it seems to me, contend—any double patenting here. For that occurs only when the claims of two patents issued to one applicant are the same. Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2 Cir., 22 F. 2d 259, 262.

■ 2. When one person has several applications pending for patents in pari materia, it matters not, on the question of prior art, as between them inter sese, in what order they issue provided that their claims are for separate inventions. Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2 Cir., 22 F.2d 259, 261, and the cases there cited.

■ 3. The file wrappers offered by the defendants—being, if my recollection is correct, Defendants' Exhibits KK, LL, MM, R, S, and W—are not material to the issues herein, for none of them involves any estoppel, which is the only ground, as I understand it, which, in this Circuit at least, renders a file wrapper a proper part of the record in a patent cause. Westinghouse Electric & Mfg. Co. v. Condit Electric Mfg. Co., 2 Cir., 194 F. 427, 430. Cf. also Smith v. Snow, 294 U.S. 1, 16, 55 S.Ct. 279, 79 L.Ed. 721; Weber Electric Co. v. E. H. Freeman Electric Co., 256 U.S. 668, 676-678, 41 S.Ct. 600, 65 L.Ed. 1162.

■ The reason for this rule is not far to seek. For a file wrapper is nothing more than a written record of the preliminary negotiations between the applicant and the Patent Office for a patent monopoly contract. If the patent is granted, such negotiations are merged in the resultant patent contract, e. g. Seitz v. Brewers' Refrigerating Machine Co., 141 U.S. 510, 517, 12 S.Ct. 46, 35 L.Ed. 837, and it is then only appropriate to look back at the preliminary negotiations when there has been fraud on the applicant's part, or some such form of overreaching is threatened, as would be involved if the patentee should seek rights under the patent vis-a-vis the public which, as part of the consideration of securing the patent, he had already abjured.

VI. Now, in successively giving separate attention to the four patents involved in these causes, I observe that the branch of the sewing machine art before me seems to be crowded with a plurality of unadjudicated patents.

I find myself, therefore, in a judicially virgin field, not only in respect of the patents before me in these causes, but also in respect of the prior art patents with which they are challenged.

VII. In the first Scharf machine patent, No. 1,719,785, granted July 2, 1929, the specifications state inter alia—

"This invention relates to improvements in sewing machines and more particularly to a sewing machine of that type particularly adapted for tipping umbrellas.

"As well known to those familiar with the subject of the manufacture of umbrellas, parasols and the like, the cover or fabric portion of the umbrella is composed of a plurality of triangular segments stitched together along their adjacent edges parallel to the ribs constituting the frame. On completion of the cover, it is stitched over the central rod and the outer periphery of the cover is then stitched or sewed by hand to the end of the rib. The rib tip is provided with a small eye or aperture, and the end of the cover turned inwardly adjacent to the eye, where it is sewed to the rib, the thread passing several times thru the fabric and eye and around the upper side and then the under side of the cover. The present invention contemplates a sewing machine for performing this stitching operation which heretofore has always been done by hand.

\* \* \*

"A further object is to provide a machine of the last mentioned character with suitable mechanism for reciprocating the needle at periodical intervals and simultaneously shifting the work support or that part which grips the fabric and rib whereby the stitching thread is caused to pass thru the eye of the rib and above and below the same in exactly the manner that the stitching operation has been heretofore performed by hand."

This patent is involved only in the third suit, Civil Action 2—331.

The claims there relied on are Nos. 1, 2, 15, 16, 17 and 18. Of these I understand that claim No. 18 is typical. It reads as follows: "18. In a machine for sewing a cover to the rib of an umbrella, the tip being provided with an eye, in combination, a needle, means for clamping the umbrella cover to the tip, means to position the tip with the eye operatively related to the needle, and mechanically operated means to successively pass a thread carried by the needle thru the eye of the tip and associated cover, and about both sides of the tip."

The experts have told me that the machine made under the first Scharf patent is an adaptation of a form of embroidery machine in which, what I ventured at the trial to call, a "shuttle" needle properly threaded was forced horizontally back and forth through the fabric to be sewn.

The claim of invention herein on the part of Scharf is that he so arranged a work-holding mechanism as to enable the embroidery machine to sew an article in which the fabric was *wrapped around the object* to which it was to be sewn.

It is a nice question whether or not there was invention in this machine.

It was a different mechanism from anything in the prior art, and performed a somewhat different function from anything in the prior art, and, when there is, as in the case of this first machine patent, a novel and usable mechanism for which the Patent Office has granted a patent, I think that there is a sound—though here it may be a thin—basis for claiming such an advance in the art as may be considered invention.

I hold, therefore, that the claims of patent No. 1,719,785 relied on in the third suit are valid.

I do not think that the disclosures of the patent to Buss and Saurer, No. 443,820, granted December 30, 1890, for an Embroidery Machine; to Eugene M. Phelps, No. 652,220, granted June 19, 1900, for a Button Sewing Machine; or to J. J. Sullivan, No. 777,564, granted December 13, 1904, for a Sewing Machine for Forming Groups of Stitches, anticipate Scharf's first machine patent, nor do I think they are close enough to constitute a fatal dilution of his inventive idea in connection with the means of holding his work.

But, although the claims herein relied on of the first Scharf machine patent are valid, I hold that the defendants' machine did not infringe them.

VIII. The second machine patent of Scharf, No.1,727,908, also involved the application to an embroidery machine chassis of a new work-holder appropriate to hold a new kind of object.

For between May 5, 1925, when Scharf applied for his first patent, and February 4, 1927, when he applied for his second machine patent, then conjoined with but later severed from his method patent, umbrella fashions had undergone some change and separate ornamental tips for umbrella ribs had come into favor. These tips were small objects—about three-quarters of an inch long. When first introduced such tips were quite expensive, and as each had to be sewn or stitched by hand to the um-

brella cover, and then—being in location vis-a-vis the cover—affixed to each rib of the umbrella, they could not be used except for high priced umbrellas.

The price of the tips, however, fell enough to make them usuable for mass production of cheap umbrellas if a method of sewing the tips to the cover by machine could be devised to take the place of such sewing by hand.

The problem, however, of securing a workholder which would firmly hold—during the sewing—such an object as a quarter inch umbrella rib-tip with a fold of umbrella covering wrapped about it presented obvious difficulties.

But Scharf had the happy thought of availing himself of the hole which was bored in the inner end of each tip and was ultimately intended to receive the umbrella rib. He devised a pin on which the tip could be temporarily placed, and, thus supported with the cover wrapped about it, would itself be firmly held and would cooperate in holding firm this necessarily awkward combination.

The specifications for Scharf's second machine patent state inter alia—

"The present invention is an improvement on the sewing machine as shown by my co-pending application, Serial No. 28,-148, filed May 5, 1925, entitled 'Sewing Machines', disclosing a machine for automatically sewing the fabric cover of an umbrella to the eye at the end of the umbrella rib which stitching operation heretofore had always been accomplished by hand.

"Specifically, the present invention comprehends an improved and more efficient machine of this character and contemplates further a sewing machine for performing a series of stitching operations to stitch the fabric cover to an umbrella tip usually of celluloid, bakelite, or similar composition, which after completion of the stitching operation is positioned on the usual metal umbrella rib.

* * *

"A further object of this invention is to provide a machine of the last mentioned character with suitable mechanism for reciprocating the needle at periodic intervals and causing an actuated relation between the needle and a work support or that part which grips the fabric and tip whereby the stitching thread is caused to pass thru the eye of the tip and relatively about the same in exactly the manner that the stitching operation has heretofore been performed by hand."

The only claim relied on in this patent is Claim 42: "42. In a machine for automatically stitching a fabric cover to a rib tip of an umbrella, the combination with a work holding mechanism including a pin upon which the umbrella tip is mounted and means for holding the fabric cover to the tip, a needle, and mechanism to cause a plurality of actuations of the needle, of means to position the tip on said pin in the path of actuation of the needle, thereby to secure the fabric in stitched relation on the tip."

Of course each article which is to be sewed by a machine presents, according to its shape, a different problem in the device by which it should be held firm whilst it is being sewn. Some such devices are not entitled to the status of inventions, but some are. Whether they are so entitled or not depends in each case on the difficulty of the problem and the success of its solution. Here the problem was difficult and the solution was entirely successful. Therefore, although the use of the pin in the second Scharf machine patent did not involve invention of the highest order, still it was, I think, an advance in the art entitled to inventive status because it involved a successful and simple device for holding firmly the somewhat unmanageable articles which it was the machine's objective to stitch together.

That, it seems to me, is the answer to the several improvements which the plaintiff made in his workholding devices culminating in the extremely simple and commercially most successful device disclosed in Scharf's third patent which I shall presently consider.

I do not think that the disclosure of the patent to Eugene M. Phelps, No. 652,220, granted June 19, 1900, for a Button Sewing Machine, or to M. McCann, No. 1,461,427, granted July 10, 1923, for a Snap Fastener Clamp for a Sewing Machine, anticipate Scharf's second machine patent, nor do I think they are close enough to constitute a fatal dilution of his inventive idea in connection with his work-holder.

I think, therefore, that Claim 42 of Scharf's second machine patent No.1,727,-908, is valid and was infringed by both the defendants to this third suit.

IX. I now turn to the Scharf Method Patent No. 1,798,110, which was divided in.

the Patent Office from the second Machine Patent.

In order to make Scharf's method patent easily understandable a prelude to it is necessary.

A. In preparing to make an umbrella, the material out of which the cover thereof is to be made is first cut into a series of triangular pieces of material of the same size and shape, and of a length depending on the radius of the contemplated umbrella. Then these pieces of material, which constitute segments of the umbrella cover, are sewn together. The seams resulting from this sewing are—after assembly of the umbrella—adjacent in each case to one of the ribs of the umbrella.

When the umbrella is opened and in use the junction between the cover and the end of the rib—whether it be the separate tip which we have here under discussion or a simple rib—is subjected to two strains. One of these strains is the result of the longitudinal thrust of the rib between its seat at the top of the umbrella and the place where the rib is fastened to the cover. The other strain is along the track of the periphery of the umbrella which is due to the fact that the ribs spread apart when the umbrella is open, and thus there is then a strain between each of the ribs.

As a consequence of these two strains, in order to have a well constructed umbrella, it is necessary to have the junction between the rib and the outward end of the seam to which it is always contiguous so firmly fastened together as—in use—safely to meet these strains.

When the fabric to cover an umbrella is constituted as above described of triangular radial segments of cloth sewn together at their long edges, there is formed on the right side of the cover by the seam of such junction what may conveniently be called a seam trough.

Under the practice of Scharf's Method Patent, No. 1,798,110, a transversely perforated tip is laid on the outer edge of this seam trough with the ornamental end of the tip lying within it and pointing towards the centre of the cover fabric, and its rib end, which contains the cylindrical cavity prepared for the ultimate reception of the rib, extending beyond the fabric. This cylindrical cavity is temporarily occupied by the pin of the workholder of either the second or third machine patent.

Then the tip and the seam of the cover material are stitched together by passing thread through the transverse perforation of the tip—which is so positioned as to allow free passage of the needle—and then to both sides thereof, so as to make in effect a figure eight of the thread binding the tip to the cover.

When each of the seams of an umbrella cover is thus supplied with tips, and the umbrella assembled, each tip is so turned as to enable its rib end to be mounted on one of the ribs and its ornamental end to show as an embellishment of the periphery of the umbrella.

Thus the manifold elements of an umbrella assume their appropriate place, and the threads which anchor the tips to the cover fabric are concealed and protected from weather by turning the tip as above described.

This method of sewing tips to the umbrella cover provides for a simple and secure means for meeting the thrusts of the two strains above mentioned.

The result is that the fabric of the cover of the umbrella is both frictionally and positively secured to the tips, and, if one of the threads of the stitching should become broken, the remaining stitches are not released as would be the case if the thread were merely wrapped around the tip.

B. The only question on this branch of the cause is whether the patent which Scharf secured for sewing the cover on to a separate umbrella tip is valid. For, if it is, there is not, as I understand it, any question but that it was infringed.

1. There are only two patents properly to be considered in the prior art which are seriously relied on by the defendants, namely, *Ornstein* No. 1,591,880; *Schultz*, No. 1,060,712. In my opinion neither of these constitutes an anticipation of the plaintiff's patent, and neither of them comes so near to it as to destroy his right to the status of an inventor in respect of it.

*Finver's* patent, No. 1,701,067, is excised from the prior art by the priority of Scharf's method invention.

2. There are, however, two prior uses which the defendants seek to prove—one by Finver and the other by Ornstein.

Before discussing these prior uses, however, it would, perhaps, be well to fix the date of Scharf's invention of his method.

3. Now, I find that Scharf's method was implicit in the use of the machine of

the second machine patent. The method was applied for with that machine on February 4, 1927, and the application therefor was divided from the application for the machine in the Patent Office. Consequently, when the discussions began, as early as the summer of 1925, between Scharf and his patent attorneys, Messrs. Blair and Kilcoyne, about their filing application for the second machine patent, the Scharf method must have been conceived. The two are coeval.

We know its subsequent history. It was demonstrated by the use of a pocket handkerchief and a tip in December 1925 to Kilcoyne by Scharf. Due to delay in getting the machine built, the machine was not demonstrated thereon to Kilcoyne until December 22, 1926, when he saw it operated at the Ware Plant in New York, using the method which was subsequently patented.

On February 4, 1927, came the application for the second machine and the patent.

I think that both Mr. Blair and Mr. Kilcoyne were thoroughly trustworthy witnesses, and their oral evidence was supported by adequate documentary evidence and is confirmed ex post facto, as it were, by the application for the second machine patent which, as above mentioned, when originally filed on February 4, 1927, carried with it claims for a patent for Scharf's method, although this was, as above mentioned, divided in the Patent Office from the second machine patent.

4. Finver's prior use rests entirely on his own oral testimony, and whilst he claims he began the use of a method similar to that of Scharf in July, 1925, he did not file in the Patent Office until January 18, 1927, the application which eventuated in his patent, No. 1,701,067.

Leaving aside the question of doubt that this delay casts on the 1925 use to which he testified, all the testimony in support of his prior use is oral and is not supported by any correspondence or other documentary evidence. It is, in my opinion, on familiar principles, not sufficient to invalidate Scharf's patent. E. G. Deering v. Winona Harvester, 155 U.S. 286, 15 S.Ct. 118, 39 L.Ed. 153; The Barbed Wire Patent, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154.

In any event, it must be remembered that Finver's prior use is no better than Finver's patent over which Scharf's was granted on the ground that Scharf had established an earlier date of invention as I have above found.

5. The alleged prior use by Ornstein was presented to me by what might fairly be called specially selected witnesses who had every reason to support his thesis because the two women witnesses who were called are related to each other, and both of them, with other members of their families, are in his employ.

His father, his brother, and the buyers for the five and ten cent stores to whom he claimed to have made sales and one of whom was available here in New York, were not called to support his evidence.

These unexplained omissions from the roster of appropriate witnesses in such a carefully tried case as this necessarily is the subject of particular criticism in the mind of the trier of the facts. The New York, 175 U.S. 187, 204, 20 S.Ct. 67, 44 L.Ed. 126; The Eastchester, 2 Cir., 20 F.2d 357, 358; The Bolton Castle, 1 Cir., 250 F. 403, 406.

This criticism is underlined herein in my opinion by the fact of Ornstein's own interest in the situation which would tend to give bias against the plaintiff to his evidence.

The situation in this respect may be briefly summarized thus:

Ornstein has for years been and still is a licensee of Scharf under the Scharf method patent and has been and still is paying royalties to Scharf in respect thereof.

After Scharf's method appeared in the trade, admittedly Ornstein abandoned his method of attaching tips to the covers of umbrellas and then he sold his patent, No. 1,591,880, to the Umbrella Tipping Machine Company of Lancaster, Pennsylvania, of which he is a stockholder, and which now owns not only Ornstein's patent but also the Levin machine patent, No. 2,125,598, for a Rib-Tip Attachment for Sewing Machines. Defeat of the plaintiff in this cause would be obviously much to Ornstein's interest for the Lancaster Company would be in an unoccupied field for the exploitation of the patents which it owns.

It would be a very rare witness in such a position who could give wholly disinterested testimony. Ornstein is not, in my opinion, such a witness.

Ornstein applied on October 25, 1924, for the patent which he got on July 6,

1926, as No. 1,591,880. He would have me believe that in 1924 he was using a different method from that described in his patent then applied for, and was using instead the method of his abandoned application which was filed on January 23, 1926, and which he had not ordered Munn & Company, his patent attorneys, to file until January of that year. See in this connection Interurban Railway Co. v. Westinghouse Electric & Mfg. Co., 6 Cir., 186 F. 166, 169.

Furthermore, I do not think that the letter of September 22, 1924, to Munn & Company is such a clear, concise and accurate statement of the method of Scharf as would enable anyone skilled in the art to take it and with it follow the Scharf method. Consequently, it was not a disclosure which would vitiate the Scharf patent. Cf. Buckeye Incubator Co. v. Wolf, D.C., 291 F. 253, 259.

Ornstein has not, I find, succeeded in sustaining the very heavy burden of proof which is cast on him to establish a prior use which would invalidate Scharf's method patent.

The mere fact that when Scharf entered the field with his method patent Ornstein abandoned his application and became a licensee of Scharf in and of itself is an action which speaks to me louder than words.

I think, therefore, that not only Ornstein's evidence of prior use fails, but that his abandoned patent application can avail the defendant nothing as against the effective filing date, February 4, 1927, of the second Scharf machine patent which then covered also the method patent, from which the latter was, as we know, subsequently divided.

6. The specifications of Scharf's Method Patent, No. 1,798,110, state inter alia—

"This invention relates to the method of making umbrellas, and more particularly to the method of sewing umbrella covers to ornamental tips adapted to be mounted on the ends of the umbrella frame ribs, now so extensively used, as distinguished from the former method of sewing the umbrella cover directly to the ends of the ribs provided with the usual eye for receiving the thread.

"The present application is a division of my earlier patent 1,727,908, dated September 10, 1929, covering a machine for carrying out the present method. As is well known to those familiar with the art, umbrellas or parasols are generally provided with a small colored ornamental tip of celluloid or the like, provided either with a perforation or groove, to which the fabric or umbrella cover is stitched, after which the cover is placed over the frame, and each tip is attached or slipped over the end of the umbrella rib.

"Prior to my invention, it was necessary to do this entirely by hand, and the machine disclosed in the above entitled patent not only provides a simple and practical apparatus for stitching the fabric to the tips, but also does it in a neat and finished manner and securely holds the parts in position with the stitches concealed. This latter feature adds to the appearance of the finished article.

* * *

"While only one of the various types of ornamental tips is herein shown, it is of course to be understood that other available forms may be used, the main idea being that the fabric is secured as by stitching to the tips with its reverse side facing outwardly, and is thereafter turned back on itself from its secured portion and/or portions so that its front side faces relatively outwardly. The tips may then be mounted on the ribs of the umbrella frame with the fabric of the umbrella disposed in secured relation thereto."

I have quoted only shortly from the specifications because I have above described the process so fully.

The claims of Scharf's method patent relied on are Nos. 2, 3, 4, 5, 6 and 7.

They read as follows:

"2. The herein described method of attaching a fabric cover to an umbrella frame, which consists in first placing the cover about a rib tip with its reverse side facing outwardly, passing a thread through the fabric and about the tip whereby to secure the fabric to the tip, turning the fabric back on itself from its secured portion so that the front side of the cover faces outwardly, and mounting the tip upon an umbrella rib.

"3. The herein described method of attaching a fabric cover to an umbrella frame provided with rib tips, each having thread retaining means, which consists in first wrapping the fabric about a tip with its reverse side facing outwardly, passing a thread through the reversed fabric and into the thread retaining means of the

tip, whereby to secure the fabric to the tip, then turning the fabric back on itself from its secured portion so that the front side of the cover faces outwardly, repeating the operation for each tip, and mounting the tips at the ends of the umbrella ribs.

"4. The herein described method of attaching a fabric cover to an umbrella tip having an eye, which consists in wrapping the cover about the tip with its reverse side outward, passing a thread thru the fabric and the eye of the tip and about the fabric at both sides of the tip, then turning the fabric from its stitched position on the tip and mounting the tip upon an umbrella rib.

"5. The herein described method of attaching a fabric cover to an umbrella tip having an eye, which consists in wrapping the fabric inside out about a perforated tip, passing a series of stitches thru the fabric and perforated tip and about each side thereof and then turning the fabric right-side out upon the tip.

"6. The herein described method of attaching a fabric cover to an umbrella tip, which consists in laying the fabric about a perforated tip with the seam parallel to the axis of the tip, clamping the fabric and tip in such position, and moving the fabric and tip relative to a reciprocating needle whereby the fabric is stitched to the tip by a series of stitches passing thru the perforation as well as to each side of the tip.

"7. The herein described method of attaching a fabric cover to an umbrella tip which consists in wrapping the fabric inside out about a perforated tip with the seam in the fabric substantially parallel to the axis of the tip, holding the fabric and tip in fixed relation to each other while performing a series of stitches thru the perforation of the tip and at one side thereof, then moving the fabric and tip from clamped relation and turning the fabric right-side out with relation to the tip."

My conclusion, after giving the matter the most careful consideration of which I am capable, is that Scharf in his method patent achieved a real and useful invention although it was a very slight advance in the art, and I feel that the hospitality of the trade to his invention is due to the fact that the method patent, and his third machine patent are complementary, and together meet a real need in the trade.

It is admitted that the Scharf method patent was infringed by the defendants Weinfeld & Kahn, Inc., directly and by the Umbrella Tip-On Corporation as a contributory infringer.

X. The specifications for the third Scharf patent, No. 1,994,406, granted March 12, 1935, for a "Machine for Sewing Fabric to Umbrella Tips", provide, inter alia—

"This invention relates to improvements in sewing machines and more particularly to machines for sewing the fabric of an umbrella tip of (obviously a misprint for 'to') the ribs or tips of the umbrella frame structure.

"Many umbrellas now on the market are provided with separate ornamental tips to which the fabric is attached, which tips with the fabric are adapted to be bodily mounted upon the ribs of the umbrella frame. Heretofore, these tips have been sewed to the fabric by hand, and it is one of the objects of the present invention to provide a substantially automatic machine for rapidly and securely stitching the fabric to these tips.

"A further object is to provide a simple and practical machine of the above character which will reliably and efficiently hold the fabric and the tip in operative relation while the tip is being sewed thereto.

                *    *    *

"A further object is to provide a machine of the above character, in which the work may be easily and quickly positioned with respect to the needle, after which the needle performs a certain series of steps in its stitching operation and automatically stops at the completion of such steps."

The claims herein relied on are Nos. 1, 2, 3, 6, 10 and 11.

Claims No. 6 and No. 11, which may be considered typical, read as follows:

"6. In a machine for sewing a cover to an umbrella rib tip having a thread engaging recess, in combination, a reciprocating needle carrier and needle positively mounted therein all during the sewing operation of securing the cover to said tip, a table support, means on said support for holding the tip and cover in desired relation during the sewing operation and comprising two jaws capable of relative movement with respect to each other and to the table support mechanically actuated means for moving the jaws relatively to

the needle thereby simultaneously carrying the tip and cover from a central position at each side thereof whereby the needle alternately passes through the cover and thread recess in the tip as well as through the cover at each side of the tip, a tip receiving member normally lying adjacent said jaws movable relatively to said jaws, and manually actuated means for separating the jaws to permit the removal from the jaws of the cover and tip and allow a new tip to be mounted on the tip receiving member.

\*　　\*　　\*

"11. A work holder for sewing machines provided with superimposed work gripping elements formed with vertical registering needle slots, and provided in their inner cooperating faces with horizontal registering open ended grooves constituting work receiving seats intersecting the slots at substantially right angles thereto, and a chuck disposed to support a work piece in position to be received in the grooves of the work gripping elements."

Hereinabove in my remarks on the Scharf method patent, I have called attention to the fact that a seam separated each triangular segment of a circular umbrella cover from its adjoining segment.

The patentable invention which Scharf made in what we have called his third machine patent, No. 1,994,406, can be found in the combination between the little pin and the gripping jaw for holding together the work, namely, the rib tip and the umbrella cover. The whole arrangement of the pin and its environment is at once very ingenious and very simple.

There are, of course, grooves in the gripping jaw and in the base on which it presses down to enable the pin with the umbrella cover wrapped around it to be clamped tight in rigid relation during the sewing process. The pin rises when the gripping jaw is separated from the work-holder and permits the removal of the sewn tip and the substitution of a new tip with its surrounding cover to be again clamped.

This combination has achieved a number of desiderata.

The tip may be mounted on the pin by the use of the hole in its rib end which is subsequently to be occupied by the rib of the umbrella and the pin is then placed so that the transverse hole in it will receive the needle. The tip is then in such a position that the cover may be wrapped

around it whilst the pin is holding it, and then when the gripping jaw and work-holder are clamped down by the use of the pedal operated chain, they will firmly clamp the umbrella cover and the tip together, and will grip the bordering edge of the seam so that any tendency of the umbrella to be displaced circumferentially around the tip by the weight of that portion of the cover which hangs over the work table will be entirely precluded.

I do not think that the Phelps patent, which is defendant's principal reference in respect of this third machine patent, is really in any way apposite. I think that Phelps had a different inventive concept and that to modify Phelps so as to produce the Scharf construction would mean an inventive act and would not mean merely the act of a skilled mechanic.

It seems to me that there is no doubt that Scharf was patentable over Phelps.

I think the hospitality with which the trade received Scharf's third machine patent, which now has one hundred and forty-nine licensees, is conclusive evidence that it supplied a real want, which others—as the record shows—had in a more or less fumbling way tried to achieve, and, that, therefore, it is an instance of invention, which, although not of a very high order, is entitled to its patent monopoly.

I now turn to the question of infringement of this third machine patent.

I do not think material the fact that the disclosure of Scharf's third machine patent shows that the work-holder and gripping jaw thereof have a function additional to those heretofore discussed, namely, that they can be moved upwards as a unit and thus, after a stitching operation, may break the thread.

It is to be remembered that this upward movement of work-holder and gripping jaw as a unit is not recited in any of the claims relied on by Scharf herein, and that it was not included in his commercial machine which adopted instead a thread cutter. It may, therefore, be regarded as a mere outside embellishment of his machine.

I do not think that this variance between Scharf's disclosure and the Scharf commercial machine prevents the defendants' machine from being an infringement of Scharf's third machine patent.

There still remains to be considered the relative movement between the workholder and the gripping jaw, both in the plaintiff's commercial machine and in the de-

fendant's machine, the object of which was to release the umbrella tip after it had been sewed on to the segment of cover in respect of which the machine was engaged.

■ As Judge Learned Hand said, if you have the same result, it matters not to which of two approaching members you "refer the standard of repose". Wachs v. Balsam, 2 Cir., 38 F.2d 50, 51, and cases cited.

It seems to me, therefore, that if one applies the claims here relied on simultaneously to the structures disclosed in the drawings of the plaintiff's patent, to the plaintiff's commercial machine and to the defendant's infringing machine, one sees that they are in essentials the same, and, consequently, that Scharf's commercial machine is an appropriate bridge between the plaintiff's patent monopoly and the defendant's infringing machine which is admittedly identical with the plaintiff's commercial machine.

It seems to me that there is not any doubt of the infringement of this patent by both defendants.

XI. In pursuance of Rule 52(a) of the Rules of Civil Procedure, the attorneys for the plaintiff must prepare in accordance with this opinion and submit to me through the Clerk's office findings of ultimate facts and the conclusions of law herein indicated.

■ I do not want any details of evidence submitted as findings of ultimate facts. But, as above indicated, there should be findings of fact additional to those herein mentioned in order that a full record of the situation now facing the defendants may be made and the juridical result of these carefully tried causes preserved.

All proposed findings of fact and conclusions of law submitted to me must be *typed in triple spacing* so that I may conveniently correct them if I wish to do so.

Attorneys for the plaintiff must give five days notice of their proposed findings of fact and conclusions of law to the attorneys for the defendants.

In submitting their findings of fact, the attorneys for the plaintiff must also submit under a separate cover, bound at the left side, a short memorandum indicating the pages of the evidence on which each finding proposed by them is based. It is not a very difficult matter to prepare such a memorandum and make it possible for me to look up any question of fact about which

I may be in doubt. All that is necessary is to give the number of the finding and to follow it with the numbers of the supporting pages or exhibits in the record of the trial.

Attorneys for the defendants, if they are so advised, may on the return day of such notice submit to me and serve on the plaintiff's attorney criticisms of the findings of fact proposed by them.

■ As under Rule 52(a) only findings of fact and conclusions of law which I sign will be filed as part of the record herein, I suggest this course for the defendants' attorneys because counter findings will not avail them in any respect. They must take their objections, if any, to my findings and conclusions by way of appropriate assignments of error on any appeal which they may take.

After the findings of fact and conclusions of law have been signed by me, interlocutory judgments for the plaintiff in accordance herewith may be submitted to me through the Clerk's office for signature.