**D & H ELECTRIC COMPANY, a corporation, Appellant,**

v.

**M. STEPHENS MFG., Inc., a corporation and Jack McLoughlin, doing business as McLoughlin Sales, Appellees.**

**No. 14399.**

United States Court of Appeals Ninth Circuit.

March 28, 1956.

Rehearing Denied May 23, 1956.

**880**

Mason & Graham, Los Angeles, Cal., for appellant.

C. G. Stratton, Louis M. Welsh, Los Angeles, Cal., for appellees.

Before STEPHENS and CHAMBERS, Circuit Judges, and WIIG, District Judge.

STEPHENS, Circuit Judge.

An action alleging patent infringement was brought in the District Court by the D & H Electric Company against M. Stephens Mfg., Inc. and Jack McLoughlin, d/b/a McLoughlin Sales. From a judgment holding no infringement, plaintiff appeals. No appeal is taken by defendants from that portion of the judgment which held plaintiff's patent valid.

The patent in suit is for a coupling device used in connecting spiraled flexible conduits (which carry electric wires) to junction boxes. Appellant, as assignee of the patent, has, since 1946, made and sold over four million of said coupling devices. The device is described in its claim, as finally allowed by the Patent Office, as follows:

> "In a coupling for spirally wound, flexible conduits, a tubular member having means at one end adapted to be affixed to the wall of a junction box or the like, the other end of said coupling being insertable within the end of a conduit and having a series of ribs extending *substantially at right angles* to the major axis of said tubular member and adapted to engage the convolutions of the conduit, said ribs being sequentially disposed in staggered relation along the outer surface of the conduit-engaging portion of said coupling, so as to define a spiral having a greater helical angle than the normal helical angle of the conduit." [Emphasis added.]

In other words, the ribs extend partially around the tubular member of the coupling so as not to fit the convolutions of the conduit as a thread, but the two to engage as would a nut with a thread different from that of the bolt and, owing to the fact that the tube is made up of twisted steel ribbons the forcing of the mismatched threads expands the tube so as to allow the insertion to "jump" the threads. Thus, the patent in suit has basically two major concepts. It covers a combination of elements in a tubular member that has (a) a series of ribs extending substantially at right angles to its major axis and (b) said ribs defining

a spiral having a greater helical angle than the normal helical angle of the con- volutions of the conduit. Considering the drawing set out in the margin,[1] it

1. Both appellants and appellees manufacture couplings for ⅜″, ½″, ¾″ and 1″ conduits; while the following drawing is of 1″ couplings, it may be considered representative of the other sizes as well.

[Drawing—comparison of one-inch couplings—D. & H. Electric Co. Coupling—M. Stephens Mfg. coupling]

will be seen that the ribs (A) are disposed so as to form a helical angle (B) which is greater than the helical angle of the conduit (C). Electrical conduit in general use is formed by spirally convolving or wrapping long strips of metal of "S" shaped cross section to form a flexible tube. Since the convolutions engage each other—but the engagement is not fast—the conduit is axially expandable or capable of being forced to a greater than normal size, and it is this property which makes possible the successful operation of the patented article in suit. The helical angle formed by the ribs on the projecting tube of the coupling device is greater than the helical angle of the convolutions of the conduit. Therefore, the insertion of the projecting tube in the expandable conduit, and the twisting of the conduit, causes the ribs on the tube and the hollow of the conduit to engage, with pressure, and hold fast. Such operation not only permits easy installation of the device, but overcomes the objection to many former couplings which come loose.

As may be seen from note 1., the basic and almost the only difference between the device (the subject of the patent in suit), which is alleged to infringe upon the patent device, is the placement of the ribs. The ribs of appellants' device are placed at 90° to the major axis, or straight across the projecting tube, while the ribs of appellees' device vary from 85° to 89° from the major axis according to the fineness of the thread.

It is apparent that appellants' major contention is that the Trial Court erred in failing to find that the ribs on appellees' coupling, although one to five degrees off the perpendicular, were "substantially" at right angles to the major axis and thus within the claim of the patent in suit. As already stated, the Trial Court found, and we think not erroneously, that the patent in suit was limited to ribs at right angles to the major axis, and that the word "substantially" was used only to indicate any tolerance as great as, but not exceeding the practical minimum in the manufacture of the device.[2]

■ Claims of a patent must be interpreted with reference to the history

2. As stated by the Trial Court in its oral opinion:

"Now, it is quite evident to me that right angle means right angle, and that the inventor so exemplified his invention, and when pinned down by the Patent Office to designate the embodiment of the invention, he says that he chooses as the embodiment Figure 2, which clearly shows a right angle. I think the word 'substantially' at right angles modifies the words 'right angles' very much, and is intended to take care of such tolerances as may be allowed in the construction of devices which are not in the realm of precision devices and the construction of precision instruments. I think a coupling which contains these broken convolutions at a five or six-degree angle is an entirely different means. I am also of the view, by examining the tubing after it had been applied, that it does show a pressure at different places when the accused device is applied than when the patented device is applied. The accused device exercises an outward pressure, while the patented device achieves a locking by a [18] stretching and a spreading of the convolution.

"I think the result is difficult to determine, because ultimately all that is achieved is to lock it in place, and the demonstrations made by the plaintiff himself, one of the inventors, show that even the prior art resulted in a locking, because when he used it on the same types of tubing, which he brought for use with his own device, a locking process resulted. Whether it is tighter or looser cannot be determined, because I think the mere fact that when it was applied it could not be applied by hand, but had to be removed by the use of pliers, in itself does not demonstrate any appreciable difference in the results. So we find that clearly one of the means used by the accused device differs from the others, and because it is an angle it operates in a different manner."

contained on the file wrapper,[3] which is nothing more than a written record of the preliminary negotiations between the applicant and the Patent Office for a patent monopoly contract.[4]

In this case it appears that the original application tendered for the patent in suit contained nineteen claims, all of which were rejected.

Over a year later, after considerable amending, re-application was made on five claims. At this time, argument was made on behalf of the applicant (appellants' assignor) that of prime importance in the invention was the fact that the ribs were not convolutions, but were at right angles to the major axis. Prior art had ribs arranged as convolutions in screw threads, either continuous or interrupted, and the file wrapper shows that applicant strongly delineated between such screw threads and the ribs of his device.[5] The revised claims were also rejected. Six months later, Claims Nos. 2 and 10 of the original nineteen claims were again submitted. Claim No. 2 was amended by the addition of the words,

> "ribs extending substantially at right angles to the major axis of said tubular member."

Patentability was claimed for Claim No. 10 on the basis that it described the tubular member as having a greater helical angle than the normal helical angle of the convolutions of the conduit.

Both claims were again rejected, although there appears some statement as to the possible allowance of Claim No. 2. Correspondence continued between the patent officer and the inventor's attorney, resulting in the patent officer rejecting Claim No. 10, and allowing Claim No. 2 in its amended form.[6]

Thus, the file wrapper history unmistakably shows that the novel feature claimed by the invention was the right angular position of the "ribs" of the device. It was only by the most earnest and aggressive argument that patentability was secured by distinguishing this feature from the interrupted screw threads contained in the prior art. It is immediately apparent that since, as urged by the inventor, the ribs of the patent article in suit perform the function entirely different from that of screw threads, the right angularity of the ribs is critical since to allow even a slight regular variation would be to loose the principle claimed for it by causing the ribs to become mere convolutions of a screw thread.

 Having asserted the novelty of the right angle principle in order to secure the patent, appellant cannot now expand his coverage to include other claims which were denied him in the proceedings before the patent office. This is simply the exercise of the doctrine of "file wrapper estoppel"—the gravamen of which is that an applicant who acquiesces in the rejection of his claim, and accordingly modifies it to secure its allowance, will not subsequently be allowed to expand his claim by interpreta-

---

3. Whiteman v. Mathews, 9 Cir., 1954, 216 F.2d 712, 715.

4. Scharf v. Weinfeld & Kahn, D.C.1940, 31 F.Supp. 689, 692.

5. In this respect his attorney stated in the letter of resubmission:
 "The other references show interrupted screw threads and do not teach applicant's arrangement of ribs which are extended at *right angles* to the axis of the coupling. *In other words, applicant's ribs cannot be likened to screw threads as they perform an entirely different function entirely beyond the concept of any of the references.*

 Reconsideration * * * is respectfully requested inasmuch as each of these claims define the novel ribs extending at right angles to the axis of the sleeve a distance less than one-half of the circumference of the sleeve. This feature is not shown nor suggested by any of the references. *As pointed out the secondary references merely show interrupted screw threads and applicant's ribs cannot be likened to such screw threads.*" [Emphasis added.]

6. In its final form this claim is set out in the body of the opinion, supra.

tion to include the principles originally rejected or their equivalents.[7]

This principle was succinctly stated by the Second Circuit in a manner peculiarly applicable to the instant case, viz.:

"The doctrine of 'file wrapper estoppel' depends upon the fact that, when an applicant has accepted the rejection of a broad claim, he may not later assert that another claim, deliberately restricted to secure its allowance, is its equivalent; * * * If Haas wished to insist upon all kinds of 'convolutions' which might result from high pressure, he was not free to abandon haphazard 'convolutions' and then to assert that the claim covered them.[8]"

So, having insisted for acceptance purposes that the placement of the ribs at right angles constitutes not interrupted threads, but ridges which do not completely encircle the tubular member—an entirely new principle—appellant cannot now insist that interrupted threads are within the scope of the patent.

The finding of the Trial Court that the word "substantially" in appellants' claim, added no scope to appellants' right angular feature, but merely protected against requiring impractical precision, was not clearly erroneous. Rather, we are convinced that such interpretation is the only one consistent with facts outlined herein.

Nor are we impressed by appellants' reliance upon the feature embodied in the greater helical angle of the ribs of the coupling device, as compared with the helical angle of the thread of the conduit. Examination of the prior art considered by the patent examiner reveals that the principle of joining threads or ribs of a greater helical angle with those of a lesser helical angle, or the joining of unfitting threads in order to secure a locking fit, is not new. In any event, the inventor's claim on this score was rejected with his acquiescence, and by reason of file wrapper estoppel he cannot now claim it, even though the action of the patent officer in rejecting it was erroneous.[9]

■ This case is complicated by the striking similarity of the patent in suit and the appellees' device, much of which of course is dictated by the limited function performed by the devices. Shape and dimensions are substantially, if not exactly, the same, the sole difference being that the angle of the ribs of appellants' device is 90° to the major axis, while the projections of the appellees' device vary from 85° to 89° to the major axis. Slight as this difference may seem, it invokes an entirely different principle of operation. By reason of their right angularity, the ribs of appellants' device are not and cannot be considered screw threads, while it is equally obvious that by their 1° to 5° variation, the projections of appellees' device can be nothing other than interrupted screw threads. Thus, as pointed out in appellees' brief, the purpose of the accused device is to more or less *fit* the conduit, while the purpose of the patent in suit is to misfit the conduit in affecting the coupling.

Affirmed.

7. I. T. S. Rubber Co. v. Essex Rubber Co., 1926, 272 U.S. 429, 444, 47 S.Ct. 136, 71 L.Ed. 335; Lehigh Valley Railroad Co. v. Kearney, 1895, 158 U.S. 461, 469, 15 S.Ct. 871, 39 L.Ed. 1055; Shepard v. Carrigan, 1886, 116 U.S. 593, 598, 6 S.Ct. 493, 29 L.Ed. 723; Leggett v. Avery, 1879, 101 U.S. 256, 259, 25 L. Ed. 865; Dixie Cup Co. v. Paper Container Mfg. Co., 7 Cir., 1948, 169 F.2d 645, 648; Smith v. Mid-Continent Inv. Co., 8 Cir., 1939, 106 F.2d 622; Supreme Mfg. Corp. v. Security Mfg. Co., 9 Cir., 1924, 299 F. 65, 66; Mantz v. Kersting, D.C.1939, 29 F.Supp. 703, 712.

8. Tampax, Inc., v. Personal Products Corp., 2 Cir., 1941, 123 F.2d 722, 723.

9. Texas Co. v. Anderson-Prichard Refining Corp., 10 Cir., 1941, 122 F.2d 829, 842.