932 F.2d 981
 21 U.S.P.Q.2d 1474
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
GRAIN PROCESSING CORPORATION, Plaintiff-Appellant,
v.
AMERICAN MAIZE-PRODUCTS COMPANY, Defendant-Appellee.
 No. 90-1524.
 United States Court of Appeals, Federal Circuit.
 April 19, 1991.
Rehearing Denied May 16, 1991.
Suggestion for Rehearing In Banc Declined June 25, 1991.
 
 Before MAYER, PLAGER and CLEVENGER, Circuit Judges.
 DECISION
 CLEVENGER, Circuit Judge.
 
 
 1
 Grain Processing Corporation ("GPC") appeals the final order amending the injunction issued after its unsuccessful effort to obtain a contempt order in its continuing patent infringement suit against American Maize-Products Company ("American Maize"). Grain Processing Corp. v. American Maize-Products Co., No. H81-0237, Memorandum Opinion and Order (May 14, 1990) ("Grain Processing II ") modified, (N.D.Ind. July 16, 1990) ("Grain Processing III "). We vacate and remand.
 
 OPINION
 
 2
 * GPC initially filed suit against American Maize in 1981, alleging infringement of U.S. Patent No. 3,849,194 (" '194 patent"). Judgment was entered that American Maize had infringed the asserted claims with a product named ARD 2370 but not with a product known as Fro-Dex 10 or Lo-Dex 10. Grain Processing Corp. v. American Maize-Products Co., No. H81-0237, Memorandum Opinion and Order, slip op. at 58-60 (Nov. 18, 1986) ("Grain Processing I "). The judgment of noninfringement of claims 12-14 by American Maize's Fro-Dex 10 product was reversed on appeal because GPC had demonstrated infringement of claims 12-14 because GPC had proved that the exceptional clarity limitation had been met and satisfaction of other limitations had been effectively conceded. Grain Processing Corp. v. American Maize-Products Co., 840 F.2d 902 (Fed.Cir.1988). An injunction was entered barring American Maize from "knowingly making or causing to be made, or selling or offering for sale or causing to be sold or offered for sale any waxy starch hydrolysate whatsoever which infringes any of the claims numbered 11 through 14." Grain Processing Corp. v. American Maize-Products Co., No. H81-0237, Memorandum and Injunction Order (Oct. 19, 1988), modified-in-part, Injunction Order (N.D.Ind. Oct. 24, 1988).
 
 
 3
 On February 17, 1989, GPC filed a motion for contempt alleging that a sample of Lo-Dex 10, purchased by GPC in December 1988, infringed claims 12-14. American Maize denied the allegation on the ground that a claim limitation that the descriptive ratio ("DR") must be "greater than about 2" was not met if the product was tested according to an assay technique called the Lane-Eynon method. Grain Processing II at 4. GPC asserted that the patent called for measurement of the DR using the Schoorl method, under which American Maize must concede that Lo-Dex 10 infringes.
 
 II
 
 4
 The Schoorl and the Lane-Eynon are two of the three "scientifically acceptable" ways of determining the content of certain sugars, or dextrose equivalents ("DEs"), in a solution. Results from use of the Lane-Eynon method produce higher values for these sugars than values derived from the Schoorl method. The specification of the '194 patent instructs one to calculate the DR by dividing the hydrolysate's total content of polysaccharides of less than seven saccharides (DP16 ) by the DE. Therefore, the higher the value of DE, e.g., from the Lane-Eynon test, the lower the calculated value of DR, given the same amount of DP1-6 .
 
 
 5
 The district court found that neither the claims nor the specification indicated which test the inventor had used, although the specification does contain Tables, 1 and 2, which compare the DRs of prior art and invented products as actually measured by the inventor. The district court noted that there also were "some special references to the Schoorl method, references to it among the computations accounted for in the file wrapper." Grain Processing II at 7 (footnote omitted). An examination of the prosecution history reveals, in the very place a trained eye would look, the inventors' laboratory notebooks, that the inventor employed the "Schoorl" test to determine DEs. Defendant's Exhibit 24 (File Wrapper and Contents of Patent 3,439,194) at 77, 84 and 142. Even so, the district court concluded:
 
 
 6
 Since these references themselves are neither numerous enough nor bold enough to be under all circumstances determinative of the claims of the patent, they are weak without some other notice for punishing the competitor who failed to use the Schoorl method for steering clear of the '194 patent. In a matter as important as this and under circumstances in which the patentee should be aware that confusion could result if clarification is not readily available he has a duty to the public to make his choice of assay methods crystal clear. This would best have been handled by specifications in the claims. Cursory mention of it in the file wrapper may be sufficient to support invention, but may not always suffice to place a competitor on sufficient notice to justify punitive penalties for infringement. See e.g. Kaiser Industries Corp v. McLouth Steel Corp, 400 F.2d 36, 50 (6th Cir.1968); SCM Corp. v. Radio Corp. of America, 318 F.Supp. 433, 451 (S.D.N.Y.1970); Norton Co. v. Carborundum Co., 397 F.Supp. 639 (D.Mass.1975), aff'd. 530 F.2d 435, 440-41 (1st Cir.1976).
 
 
 7
 Grain Processing II at 7.
 
 
 8
 Therefore, since the "assay method is not disclosed in the claims of the patent, nor clearly made an unmistakable disclosure even in the file wrapper, ... this court would be acting in defiance of equity to find the defendant in contempt on the basis that the parties know that the Schoorl method was the only DE assay method to be used in determining infringement in these cases." Id. at 10. Furthermore, the district court stated that it could penalize American Maize only if American Maize "is found to have been fully and unmistakably aware of" a violation of the injunction. Id. at 4. Nonetheless, the district court issued a prospective injunction that barred further manufacture of product that would infringe the claims when measured using the Schoorl test. Grain Processing II at 13. Upon motion for reconsideration, the district court entered the appealed final order which stated that "the assay method used in determining its DR shall be any scientifically acceptable method." Grain Processing III at 2. Both parties agree that the final order permits American Maize to use the Lane-Eynon test to demonstrate lack of infringement because, the district court explained, "if, by any scientifically acceptable method of measure the product is found not to have exceeded 1.9, then limitation (4) has not been violated." Grain Processing, Order Lifting the Stay (N.D.Ind. Sept. 12, 1990).
 
 III
 
 9
 In this appeal, GPC contends that the district court erred as a matter of law in misinterpreting "Claim 12 by reading into it a limitation that is not there." Furthermore, GPC contends that "all of the evidence suggests that the method actually used by the patentees was one of the two relied upon by GPC, i.e., the Schoorl, not the Lane Eynon." The issue before us, then, is the construction, by one skilled in the art, reading the claims, the specification, and the prosecution history, of the claim phrase, "a descriptive ratio of less than 2" as the inventor reasonably intended the term to be understood by those readers. McGill, Inc. v. John Zink Co., 736 F.2d 666, 675, 221 USPQ 944, 949 (Fed.Cir.), cert. denied, 469 U.S. 1037 (1984) (claims to be interpreted "as they would be construed by those skilled in the art" after considering "a whole host of factors" including claim language, specification, prosecution history, and understanding of those skilled in the art). Generally, "[w]ords in a claim 'will be given their ordinary and accustomed meaning, unless it appears that the inventor used them differently.' " Envirotech Corp. v. Al George, Inc., 730 F.2d 753, 759, 221 USPQ 473, 477 (Fed.Cir.1984) (quoting Universal Oil Prods. Co. v. Globe Oil & Refining Co., 137 F.2d 3, 6, 54 [sic, 58] USPQ 504, 508 (7th Cir.1943), aff'd, 322 U.S. 471 (1944)). A claim phrase must be interpreted as it would be construed by one skilled in the art reading the relevant documents, and understanding that an inventor is permitted to be his or her own lexicographer, so long as idiosyncratic term usage is both comprehensible and reasonable. Autogiro Co. v. United States, 384 F.2d 391, 397, 155 USPQ 697, 702 (Ct.Cl.1967). Furthermore, claim construction is a matter of law. Intervet America, Inc. v. Kee-Vet Laboratories, Inc., 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989) ("our review of claim construction is plenary").
 
 IV
 
 10
 Here, American Maize does not contest that the inventor used the Schoorl test in actually measuring DEs. Furthermore, this information was publicly available in the prosecution history. American Maize concedes that the Schoorl test is reliable and is approved by an industry standard-setting body. Therefore, in this case, whether or not the preferred industry standard is the Lane-Eynon test is simply not probative of the proper scope of this claim when construed in light of the prosecution history. "[W]ords used in a patent cannot be given their ordinary and accustomed meaning where it appears from the patent that the inventor has attached some different and/or specific meaning to them." General Electric Co. v. United States, 572 F.2d 745, 753, 198 USPQ 65, 71 (Ct.Cl.1978). The conclusion is inescapable that one skilled in the art reading the patent and the prosecution history would find that DEs had to be measured using the Schoorl test.
 
 
 11
 In response to GPC's motion for an order of contempt, American Maize argued that "[o]nly disclosure that appears in the body of the printed patent can be used to add meaning to a term used in the claims." Grain Processing II, Defendant's Memorandum In Opposition to Plaintiff's Motion for an Order of Contempt, reprinted in Joint Appendix at 404 (citing Kaiser Indus. Corp. v. McLouth Steel Corp., 400 F.2d 36, 50, 158 USPQ 565, 579 (6th Cir.1968), cert. denied, 393 U.S. 1119 (1969)). Kaiser states that "[t]he patent law does not require a prospective inventor to search so far [as affidavits submitted to the Patent Office] in attempting to determine the scope of a patent and the areas left open for inventive inquiry." Id. The district court erred in applying this statement to the clarification of the meaning of an ambiguous claim term. Thus applied, the statement in Kaiser is neither the law of this Court nor the law of the land. Moeller v. Ionetics, Inc., 794 F.2d 653, 656, 229 USPQ 992, 994 (Fed.Cir.1986) ("However, resort to certain extrinsic evidence (i.e., the specification, prosecution history, and other claims) is always necessary to interpret disputed claims."); Graham v. John Deere Co., 383 U.S. 1, 33 (1966) ("It is, of course, well settled that an invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office."). Moreover, the other appellate case cited by the district court states correctly that "[c]laims of a patent must be interpreted with reference to the history contained on the file wrapper...." Norton Co. v. Carborundum Co., 530 F.2d 435, 440 n. 14, 189 USPQ 1, 5 n. 14 (1st Cir.1976) (quoting D & H Electric Co. v. M. Stephens Mfg., 233 F.2d 879, 882-883, 108 USPQ 27, 29, 110 USPQ 469, 470 [sic] (9th Cir.1956)). We therefore conclude, as a matter of law, that identification of the products covered by the claims of the '194 patent requires the use of the Schoorl test to obtain DRs.
 
 
 12
 We vacate the final order of July 12, 1990, and remand for proceedings not inconsistent with this opinion.
 
 COSTS
 
 13
 Costs to appellant.