**HANN v. VENETIAN BLIND CORPORA-
TION et al.**

No. 9186.

Circuit Court of Appeals, Ninth Circuit.

April 15, 1940.

456

Lyon & Lyon and Lewis E. Lyon, all of Los Angeles, Cal., for appellant.

J. Calvin Brown, of Los Angeles, Cal. (Frank M. Gunter, of Los Angeles, Cal., of counsel), for appellees.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

Appeal from the decree of the District Court dismissing plaintiff's complaint for infringement, and declaring certain claims of plaintiff's Patent No. 1,829,718, granted October 27, 1931, for a "Venetian Blind Bracket", invalid in law.

One of the grounds upon which the court declared said claims to be invalid, was that Edwin Anderson [the claimed inventor] was not the original or first inventor or discoverer of any material or substantial part thereof. In the view that we take of the case, that said conclusion of the trial court should be affirmed, it is necessary to examine only this claim of invalidity, for if the plaintiff's patent is invalid on any ground, the decree of the District Court dismissing the complaint must be affirmed.

The application for plaintiff's patent in suit was filed on July 26, 1930. The patent was granted on October 27, 1931. Prior to the date of the application for plaintiff's patent, and on February 26, 1930, application was made by one J. W. Dunn for a patent, which was subsequently issued as Patent No. 1,807,061, on May 26, 1931. It is clear that the Dunn application discloses the discovery claimed to have been made by plaintiff's patent, and covered by the claims in suit. In this situation, in order for plaintiff's patent to be declared valid, it is necessary that it be proved that Anderson's invention antedated the disclosure by Dunn. Alexander Milburn Company v. Davis-Bournonville Company, 270 U.S. 390, 400, 401, 46 S.Ct. 324, 70 L.Ed. 651. This the District Court found plaintiff had failed to prove. The finding of the District Court to the effect that Anderson, the claimed inventor of plaintiff's patent, did not make his invention prior to July 26, 1930, the application date of his patent, is assigned as error.

There is a considerable conflict in the cases dealing with the burden of proof in the situation just revealed. In this connection, the trial court stated [21 F. Supp. 913, 915],

"The date of the invention, on absence of evidence to the contrary, is presumed to be that on which the application was filed in the Patent Office, and where the date is carried back beyond the application, proof must be persuasive to a certainty, beyond a reasonable doubt. The Alexander Milburn Co. v. Davis-Bournonville Co., 270 U. S. 390, 46 S.Ct. 324, 70 L.Ed. 651."

We are not prepared to agree that in every case where the patentee of a patent is attempting to carry the date of his invention back beyond the date of his application, he must present proof "persuasive to a certainty, beyond a reasonable doubt" as stated by the trial judge.

In Willard v. Union Tool Co., 9 Cir., 1918, 253 F. 48, this court considered the question of the burden of proof in a case very similar to the instant one. In the cited case suit was brought claiming infringement of the Willard patent, which had been applied for on March 11, 1912. The defendants claimed that the Willard patent was invalid because anticipated by one Griffin. Griffin's patent was applied for on October 5, 1911, although it was granted subsequent to Willard. The Griffin patent disclosed, but did not claim the principle in suit. The trial court held that since Griffin's application was first, the presumption applied that he had reduced the same to practice as of that date, and that therefore the burden was on the plaintiff to show beyond a reasonable doubt that he had reduced his invention to practice prior to Griffin's application. This court refused to follow the "beyond a reasonable doubt" rule, and said (page 51 of 253 F.): " * * * We cannot agree that the rule is applicable here. We think the rule to be applied is that which governs contests between rival inventors for priority of invention whose applications are pending at the same time, which is that, where both inventors have reduced their conceptions to practice, the burden of proof is on him whose application is second to show that he was the first to reduce the in-

vention to practice, and that in sustaining such burden he is controlled by the ordinary rules of courts of law with respect to the burden of proof, and is required to establish his priority only by a fair preponderance of the evidence, and not by proof conclusive in character, or beyond a reasonable doubt."

Turning now to the evidence presented by the plaintiff to sustain his claim that Anderson was the original and first inventor of the subject matter of the patent in issue, Anderson testified as follows:

That he received a letter from Mr. Dunn, then of the Consolidated Venetian Blind Co., dated November 22, 1928, a copy of which was admitted in evidence. This letter states that a model blind was being sent Anderson, outlines certain troubles in the operation of Venetian blinds, and then states, "I would like to have you spend a little time thinking about all that I have said above, and see if you cannot devise a means of supporting the blind from a die casting connection, and along the principle shown in the samples we are sending you, and embody in this some piece of hardware, a simple means for holding the blind tilted at any position." That after the receipt of said letter Anderson set to work to develop the invention; that it was developed in the month of December, 1928; that he kept it after it had been developed, without doing anything with it, for about five or six months; that after that period and in the fall or late summer of 1929 he made and sent Dunn a sample, at Dunn's request; that the sample was [at the time of testifying] in his [Anderson's] office, having been returned from Dunn; that after the return of the sample Anderson set to work and developed the dies and tools for making the parts; that the dies were completed some time in the fall of 1929; that after the completion of the dies, Anderson made up several thousand of the invented articles and sold them to Schatz Venetian Blind Company; that these sales took place prior to the end of 1929; that in the spring of 1930 Anderson sold some of the articles to the Western Venetian Blind Company; that at the time of the sale of said articles to the Western Venetian Blind Company, Dunn was connected with that company and that Anderson dealt with Dunn in making said sale. In support of his testimony to the effect that he developed the device in 1928, Anderson produced a photostat of a sketch which he claimed to have made in 1928. The sketch bears the words "Drawn by Edwin Anderson Dec. 27–1928" in handwriting which Anderson testified was his own. Anderson testified that a Mr. Williams and a Mr. Sams had seen the sketch about the time it was drawn. He also testified that Mr. Williams was a die maker employed by the Union Die Casting Company at the time of the trial. Mr. Williams was not called as a witness to support Anderson's testimony. Neither was the sample, which Anderson testified he had at his office, introduced into evidence.

J. W. Dunn was also called as a witness on behalf of the plaintiff in an effort to show that Anderson and not Dunn was the first inventor of the device. Dunn testified to the sending of the letter to Anderson, dated November 22, 1928, above referred to, and to the model blind which was forwarded Dunn at the same time. Dunn didn't recall that the model blind had any kind of tilting apparatus on it. The model was not introduced into evidence.

Dunn further testified that he [Dunn] was not the inventor of the device in suit, but that he procured the same from the Union Die Casting Company [Anderson's company] prior to his application and presented it to his draftsman.

On cross-examination Dunn was questioned about a letter, dated August 22, 1929, which he admitted sending Mr. Anderson. This letter recites,

"I received the model, and with one exception it is O.K. Some better means must be developed for fastening the tapes on the center connections, and I think I have that figured out. The enclosed crude sketch will show you.

"There is one more thing, and that is the grooved pulley through which the tilting cord operates. This pulley should be thicker, with a spiral groove in it so the cord will go around twice to prevent slipping. With just one wrap as it is now, the cord will stretch and wear to such an extent that eventually it will slip through, and inasmuch as it is desirable to have the cord arranged with tassels on the ends, it should not be allowed to slip through this pulley. I know you

will understand this, so will not make any sketch.

"Again, the center connections are not spaced on your sample quite wide enough to allow the tape to go between the ends of the tilt rail pieces. Space for tape is shown on sketch enclosed.

"I do not exactly like the combination center connection and worm gear device. Tilting cords should go at the extreme end of the blind, so think it would be better to use two of the flat center connections and a separate worm gear tilting device at the end of the rail.

"Another thing, the hook on the center support which extends downward should be so designed that it is not possible for the rail to jump out when the blind is raised up.

"If we use the worm gear device at the extreme left hand end of the rail, and center connections at each tape, the center hooks should be so designed that the rail can be easily hooked in, especially because one of these connections will be located at the first tape to the right, or from four to seven inches from the worm gear device.

"You mentioned in your letter that you had taken out patent protection. I presume you took this out in your name, and will transfer it to me when all charges for models, patent fees, etc., have been paid, and you have received an order for dies and a quantity of the hardware. * * *"

This letter would seem to support Anderson's testimony to the effect that a sample had been sent Dunn in the fall or late summer of 1929. However, it also supports the theory of the defendant and the findings of the trial court that the suggestions of Dunn led to the vital specifications set out in the Anderson patent and claims made therein.

To counteract the weight to be accorded Dunn's testimony that he was not the inventor of the device, the defendant brought out in cross-examination of Dunn the fact that he and Anderson had an arrangement under which Dunn received 4 cents for every device that was sold.

While we do not agree with the trial court as to the weight of the burden of proof upon the plaintiff to show his invention prior to the date of Dunn's application, we believe that the trial court's conclusion that Anderson was not the first inventor must be affirmed. As stated by this court in Willard v. Union Tool Co., supra, the burden of proof by a fair preponderance of the evidence is on him whose application is second to show that he was the first to reduce the invention to practice; and we do not believe that the plaintiff has sustained that burden.

We think that an analysis of the case will be helpful. The plaintiff is contending that its patent is valid, and that Anderson was the original and first inventor. However, an anticipating fact [Dunn's application] prior to the date of Anderson's application was proved beyond a reasonable doubt, thereby shifting the burden of proof to the plaintiff to prove, by a preponderance of the evidence, that his invention was made still earlier than when that fact occurred. It is elementary in patent law that an invention is not complete until it is "reduced to practice". An application for a patent is equivalent to a reduction to practice, designated by the courts for convenience as "constructive reduction to practice". However, when in a case like the one under consideration it is desired to carry the date of invention back of the date of application, earlier actual reduction to practice is required to be proved.

It will be noted that the entire evidence presented in support of plaintiff's claim consisted of the oral testimony of Anderson and Dunn, above outlined, and the sketch which Anderson claimed he made about the time of his claimed conception of the invention. This sketch cannot be said in any sense to prove a reduction to practice, for as said in Corona Cord Tire Co. v. Dovan Corp., 276 U.S. 358, 383, 48 S.Ct. 380, 387, 72 L.Ed. 610, "A process is reduced to practice when it is successfully performed. A machine is reduced to practice when it is assembled, adjusted and used. A manufacture is reduced to practice when it is completely manufactured. A composition of matter is reduced to practice when it is completely composed [citing cases]."

The only testimony whatever touching upon the claimed reduction to practice is the testimony of Anderson that he made and sent Dunn a sample, and that sales were made to Schatz Venetian Blind Company. The sample, however, which was admittedly in Anderson's pos-

session, was not produced. Nor was any corroborating testimony presented to substantiate the claimed sales to Schatz Venetian Blind Company, or that the articles sold embodied the principles of the claimed invention. Here is a situation where the decisive question was whether or not the invention had been "reduced to practice". The sample blind, which was accessible to the plaintiff, certainly would have showed whether or not it embodied the claims here in suit. Yet the plaintiff took no steps to introduce this sample blind, but relied entirely on the oral testimony of Dunn and Anderson. Applying the familiar rule that when there is material testimony which would establish a fact in issue in the present ability of the litigant to present and he fails to do so, and fails to offer a reasonable excuse for such failure, the presumption follows that such testimony, if presented, would be against such party (Mammoth Oil Company v. United States, 275 U.S. 13, 48 S.Ct. 1, 72 L.Ed. 137), we are led to the conclusion that the sample and the sales did not constitute a reduction to practice of the invention in suit.

■ We are not unmindful of the rule that where two parties have reduced an invention to practice, the one who first conceived and disclosed the invention and with reasonable diligence connected his conception with its reduction to practice is the "original and first inventor" under the statutes, without regard to which of the two first completed the reduction to practice. Under this rule it might be contended that the sketch introduced by Anderson proved a prior conception, and that the plaintiff is entitled to rely upon the date of conception as the date of his invention. However, it should be borne in mind that due diligence is necessary to be proved in order to relate the date of invention back to the date of conception. Anderson testified that he developed the invention in December, 1928, and did nothing with it for about five or six months. The application for patent was not filed until July, 1930, over a year and a half later. No attempt was made to show diligence in reducing the invention to practice, hence the rule above referred to does not apply. We quote in this connection from the case of Automatic Weighing Machine Co. v. Pneumatic Scale Corp., 1 Cir., 1909, 166 F. 288, 298, 301:

"The law appears to be well established that a conception evidenced by disclosure, drawings, and even a model, confers no rights upon an inventor unless followed by some other act, such as actual reduction to practice, or filing an application for a patent. A conception of this character is not a complete invention under the patent laws. It may constitute an invention in a popular sense, but it does not make the inventor the 'original and first inventor' under the statutes. If it did constitute an invention under the statutes, then an inventor might stop with his drawings and disclosure, and hold the field for all time against a subsequent inventor who has reduced his invention to practice, or who has obtained a patent. The law will not permit this. An inventor must not stop with this stage of his invention, but he must proceed with reasonable diligence to perfect his invention, either by actual reduction to practice, or by filing his application for a patent. * * *

"We understand the true rule to be that a patentee who undertakes to carry back the date of his invention to his drawings and disclosure must show reasonable diligence in adapting and perfecting his invention, either by actual reduction to practice or by filing his application. This rule is supported by the great weight of authority, and we have found no cases which directly hold that this is not the law, although there are some cases in which a patentee has been permitted to carry back his invention to his drawings and disclosure, where the question of diligence was not raised or passed upon."

In addition to the above, we have the findings of fact of the trial court, which, as we pointed out above in our discussion of the letter from Dunn to Anderson dated August 22, 1929, are supported by the evidence, as follows: "It is obvious to me from the testimony of Dunn and Anderson, and the letter written by Dunn to Anderson for the development of a die and his direction as to the desired end, that the suggestion of Dunn led to the vital specifications set out in the Anderson patent and claims made therein. This conclusion is based upon the manner of the testimony of these witnesses while upon the stand, and sug-

gestions in relation to the model sent to Anderson, and likewise the failure to produce the model or disclosure with relation to the activities inspired by the letter, and failure to file his application until July 26, 1930; * * *."

In the court's conclusions of law appears the following: "That the Anderson claims 1, 2, 5, 7 and 12 are invalid and void because one J. W. Dunn exhibited said alleged invention to Edwin Anderson, and the said Edwin Anderson, seeking surreptitiously to appropriate the aforesaid alleged invention, or so much thereof as is embraced in the claims of the patent sued on, unjustly and unlawfully filed in the Patent Office of the United States an application therefor, wherein he falsely alleged himself to be the inventor thereof, and thereafter he surreptitiously and unjustly obtained the patent sued on, for that which was in fact suggested by said J. W. Dunn."

If it is true, as found by the trial court, that the suggestions of Dunn led to the vital specifications set out in the Anderson patent and the claims made therein, it would seem immaterial whether or not there was an actual model of the device made prior to the date of Dunn's application. We quote from Walker on Patents (Deller's Edition) Vol. 1, page 400, § 114: "* * * if [another person] makes suggestions of practical value which assist in working out the main idea and making it operative, or contributes an independent part of the entire invention which helps to create the whole, he is a joint inventor even though his contribution be of minor importance."

Section 117 (p. 403) of the same volume of Walker on Patents states the rule, citing cases, that in the case of a joint invention, the patent should be obtained by the joint inventors, and a patent granted to one of the joint inventors as the sole inventor, is invalid.

It avails nothing for the plaintiff to argue that the defendant introduced no testimony to contradict the testimony of Dunn and Anderson, for as said by the Supreme Court in Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733, 734, 35 L.Ed. 501, "Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions.

* * * In Kavanagh v. Wilson, 70 N.Y. 177 * * * the court said: 'It is undoubtedly a general rule that when a disinterested witness, who is in no way discredited, testifies to a fact within his own knowledge, which is not of itself improbable, or in conflict with other evidence, the witness is to be believed, and the fact is to be taken as legally established, so that it cannot be disregarded by court or jury. But this case is not fairly brought within this rule. Here the witness was not wholly disinterested. He was a son of the plaintiff, engaged in his business, and thus biased and interested in feeling. His compensation for drawing the contracts (and how large that was to be does not appear) depended, I infer from the evidence, upon his father's success in getting his compensation as the broker.' The court then went on to observe that the story told by the witness was not entirely free from some improbability. * * * In Koehler v. Adler, 78 N.Y. 287, it was held that a court or jury was not bound to adopt the statements of a witness simply for the reason that no other witness had denied them, and that the character of the witness was not impeached; and that the witness might be contradicted by circumstances as well as by statements of others contrary to his own, or there might be such a degree of improbability in his statements as to deprive them of credit, however positively made. * * * For the considerations mentioned, and the fact that the court below had the witnesses before it, and could thus better judge of the credibility to which they were entitled, we are not prepared to hold that its finding was not justified."

█ Here it appears that both Anderson and Dunn are financially interested in upholding the validity of the Anderson patent. In addition there is the letter from Dunn to Anderson suggesting certain changes in the patent, and the suggestion therein that when the patent was obtained it should be assigned to Dunn. These facts, together with the fact that the trial judge, who saw and heard the witnesses, is in a better position to determine their credibility and the weight to be attached to their testimony than the reviewing court, lead us to the conclusion that the findings of the trial court should not be set aside.

Affirmed.