Seth E. ALDRIDGE, Plaintiff,

v.

GENERAL MOTORS CORPORATION, a corporation, Defendant.

No. 13187.

United States District Court
S. D. California,
Central Division.

Dec. 4, 1959.

Martin & McCarthy, by Charles C. McCarthy, West Los Angeles, Cal., for plaintiff.

Lyon & Lyon, Los Angeles, Cal., for defendant.

HALL, Chief Judge.

The within action is a suit at law for damages for alleged infringement of a patent. The plaintiff seeks no equitable relief, and has demanded a jury trial.

The defendant has answered with the usual denials and allegations, and by Paragraph 11 of its Answer raises the issue of file-wrapper estoppel on the question of infringement by defendant's device, in the following language:

"11. Further answering the complaint, defendant alleges that by reason of the proceedings in the United States Patent Office during the prosecution of the application which resulted in said Letters Patent No. 2,444,149, and the admissions and representations therein made by or on behalf of plaintiff in order to induce the grant of a patent upon said application, plaintiff is estopped to claim for said Letters Patent a construction, were the same otherwise possible, such as would cause said Letters Patent to cover or include any apparatus made, used or sold by defendant."

On motion of defendant under F.R.Civ. P. rule 42(b), 28 U.S.C.A.,[1] the court separately tried, without a jury, the question of file-wrapper estoppel, and the matter is now submitted on that question on the merits. The plaintiff offered no evidence and made no offer of proof, contending that, having demanded a jury, the court was without power to try the question of file-wrapper estoppel.[2]

■ It is elementary that estoppel is an equitable defense. Mather v. Ford Motor Co., D.C.E.D.Mich.1941, 40 F. Supp. 589.

■ It is thus not triable to a jury, but is triable to the Judge. As Chief Justice Taft said in Liberty Oil Co. v. Condon Nat. Bank, 1922, 260 U.S. 235, at pages 242–243, 43 S.Ct. 118, at page 121, 67 L.Ed. 232:

"Where an equitable defense is interposed to a suit at law, the equitable issue raised should first be disposed of as in a court of equity, and then if an issue at law remains, it is triable to a jury. Massie v. Strad-

ford, 17 Ohio St. 596; Dodsworth v. Hopple, 33 Ohio St. 16, 18; Taylor v. Standard Brick Co., 66 Ohio St. 360, 366, 64 N.E. 428; Sutherland, Code Pl. and Pr. § 1157. The equitable defense makes the issue equitable, and it is to be tried to the judge as a chancellor. The right of trial by jury is preserved exactly as it was at common law."

■ The burden of proving estoppel is on the party asserting it which, in this case, is the defendant. Rajah Auto Supply Co. v. Belvidere Screw & Machine Co., 7 Cir., 1921, 275 F. 761 at page 765; National Nut Co. of California v. Sontag Chain Stores Co., 9 Cir., 1939, 107 F.2d 318 (Reversed on other grounds 310 U.S. 281, 60 S.Ct. 961, 84 L.Ed. 1204).

■ At the trial of the limited issue of estoppel, defendant offered no oral testimony, and placed in evidence only: a certified copy of the file wrapper of plaintiff's patent; a copy of plaintiff's patent No. 2,444,149; a copy of the Arthur patent No. 2,125,368; exemplars of three devices, separately and in assembly, in a timer, viz.: defendant's device, plaintiff's device, and Arthur's device; and, colored drawings of plaintiff's structure, defendant's structure, and the Arthur structure.

All of these were admitted on pre-trial hearing to be true and correct reproductions of what they purported to be, and were so found by the pre-trial order of September 14, 1959, except that plaintiff did not admit that the colored drawing of his structure, Exhibit M, was correct. But plaintiff failed, in the various pre-trial hearings (there were six) and at the time of trial, to point out or even suggest wherein the colored drawing, Exhibit M, was incorrect. Moreover, plain-

1. Rule 42(b) "Separate Trials. The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

2. Plaintiff filed no opposition or points and authorities in opposition to defendant's motion to separately try the issue of file-wrapper estoppel, but did orally object. At one stage of the proceedings, the court required counsel to brief the right to trial by jury in a patent case, but plaintiff filed no brief or memorandum on the subject at all.

tiff offered no evidence at all at the trial. Furthermore, it is plain, from the drawings in plaintiff's patent and the exemplars, Exhibits C and G, of plaintiff's structure (admitted by plaintiff to be correct), that the colored drawing, Exhibit M, is correct.

Thus, there was no issue and no dispute as to any fact on the trial of the limited issue of file-wrapper estoppel.

■ The law applicable to the doctrine of file-wrapper estoppel is well settled, and is aptly stated by the Ninth Circuit in D & H Electric Co. v. M. Stephens Mfg. Inc., 9 Cir., 1956, 233 F.2d 879, at pages 883–884, as follows:

"* * * the gravamen of which (file-wrapper estoppel) is that an applicant who acquiesces in the rejection of his claim, and accordingly modifies it to secure its allowance, will not subsequently be allowed to expand his claim by interpretation to include the principles originally rejected or their equivalents."

and further quoted with approval (at page 884) from Tampax, Inc. v. Personal Products Corp., 2 Cir., 1941, 123 F.2d 722, at page 723, as follows:

"'The doctrine of "file wrapper estoppel" depends upon the fact that, when an applicant has accepted the rejection of a broad claim, he may not later assert that another claim, deliberately restricted to secure its allowance, is its equivalent.'"

Before turning to the contents of the file wrapper, it is well, as briefly and as simply as possible, to describe plaintiff's device, the prior art device of Arthur's patent which ante-dated plaintiff's patent and was mentioned in the file wrapper of plaintiff's patent, and the defendant's device.

The thing involved is a very small but important part in the assembly of an ignition timer for internal combustion engines.

There are many parts to such an assembly, but the parts here involved are few and simple. Plaintiff's patent covers only one part. Ignition timers are built in round metal housings about four inches in diameter. About one-half inch below the top rim of the housing is a curved concave annular groove shaped about as a right-hand parenthesis mark. This groove is common in all ignition timers, to which any of the devices involved in this suit are adaptable, in curvature, size, depth, location and function. In the bottom of the housing, there is a breaker plate which is flat and which covers, or almost does, the bottom part of the housing. This plate is common to each of the devices in size, location and function. It is not, and is not claimed to be, a part of plaintiff's invention. Attached to the plate and extending upwardly to the groove are three upright members which, for convenience, will be called "lugs," or "arms," or "shoes." In the operation of the timer, the breaker plate oscillates or rotates to a very limited degree, and the "arms" or "lugs" or "shoes," being attached to the plate, also move.

The plaintiff's patent concerns no part of the timing device except the "arms," "lugs," or "shoes" in relation to the breaker plate and the groove in the timer housing.

In the Arthur patent, the upper part of the arms are curved oppositely to the curve of the groove in the timer housing, and the arms hold a ball which fits into the groove of the timer housing, which ball serves as a bearing upon which the arm moves when the breaker plate moves.

In *defendant's* device, the arms are curved the same, and are the same size and shape as in the Arthur device, but instead of a ball for a bearing, defendant uses a short bakelite rod which is stationary in the groove upon which the arm moves when the plate moves.

In *plaintiff's* device, the breaker plate and the "arms" or "shoes" as he calls them, are "unitary" as plaintiff describes it, without any ball-bearing or rod between the arms and the groove in the timer housing. The arms extend upward, and instead of being curved oppositely to the direction of the curve in the

groove of the timer housing (as in Arthur and defendant's devices) are curved in the same direction, and are the same curvature, shape and size as the groove in the timer housing, and fit smoothly into the groove, or as plaintiff states in each of the seven claims in his patent—"are engaged in said groove" or "engage a groove" in the timer housing. Thus the plaintiff simplified the apparatus by eliminating a bearing of any kind between the "arm" or "shoe," and making the "arm" or "shoe" perform the function of a bearing instead of being merely a holder of the ball-bearing as in the Arthur device, or a holder of the bakelite rod as in defendant's device.

Plaintiff's original application for patent contained 11 claims. Claims 1 to 5 inclusive each called for "shoes" to be "engaged in said groove" of the timer housing. Claims 6 to 11 inclusive each called for "shoes" but did not describe them as fitting into or being "engaged" in the groove of the timer housing.

All claims were rejected by the Patent Office, 1 to 5 for lack of patentable features over the Arthur patent, and 6 to 11 as being fully met by Arthur. The plaintiff, on March 29, 1947, acquiesced in the denial of Claims 6 to 11, and instructed the Patent Office to "cancel Claims 6–11." At the same time, plaintiff renewed his application for the original five claims, and added two new claims, in each of which the "shoes" were "to directly engage a groove in the timer housing." All claims were again rejected by the Patent Office.

But plaintiff renewed his application again, and in doing so, pointed out that his claims differed from Arthur in that his construction, by having the shoes "engaged in a groove" with the shoes acting as a bearing, eliminated one part, viz.: the ball-bearing, necessary under the Arthur patent. As plaintiff stated to the Patent Office—"Omit the balls, and Arthur's timer is inoperative," and "* * * since applicant *omits* Arthur's *ball-holding lugs* or lips, and embodies *shoes* that have *direct bearing* in *the groove, he has devised a construction*

that is *wholly different mechanically from Arthur,* and has obtained a functional result incapable of attainment by Arthur." (Emphasis supplied.)

The Patent Office then allowed original Claims 1 to 5 inclusive, and the two Claims which were added on March 29, 1947, as 6 and 7.

It is defendant's contention that the "lugs" or "shoes" in defendant's device do not fit into or engage the groove in the timer housing, and that plaintiff, by cancelling Claims 6 to 11 inclusive, none of which called for "shoes" or "lugs" to fit into or to be "engaged in" or to "engage" the groove of the timer housing, and by amending what are now Claims 6 and 7 so that they call for "shoes" to "directly engage a groove," recognized the difference between "shoes" which do "engage" the groove and those which do not, and proclaimed his abandonment of all that do not fit or engage in the groove.

Clearly, the plaintiff's cancellation of Claims 6 to 11 was an abandonment of a right to patent a device where the "arms" or "shoes" *do not* "engage" or set in the groove of the timer housing. And, it is equally clear that the arms or lugs in defendant's device *do not* "engage" or set in the groove of the timer housing; they hold the bakelite bearing which does fit in the grove. As plaintiff said to the Patent Office about Arthur's device—"Omit the balls, and Arthur's timer is inoperative," so it must be said of defendant's device—"Omit the bakelite bearing, and defendant's timer is inoperative."

Exhibit Supply Co. v. Ace Patents Corp., 1941, 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736, involved a conductor means in a pinball machine, which was first described in the claim as being "carried by" the table, but which was amended, after disallowance, to provide for the conductor means to be "embedded in" the table. In holding that the patentee had lost his right to claim infringement by a device where the conductor means was not "embedded in" the table, because plaintiff had substituted that language

instead of "carried by" the table, the court said, 315 U.S. at pages 136–137, 62 S.Ct. at page 518:

"assuming that the patentee would have been entitled to equivalents embracing the accused devices had he originally claimed a 'conductor means embedded in the table', a very different issue is presented when the applicant in order to meet objections in the Patent Office, based on references to the prior art, adopted the phrase as a substitute for the broader one 'carried by the table.' Had Claim 7 been allowed in its original form, it would have read upon all the accused devices since in all the conductor means complementary to the coil spring are 'carried by the table.' By striking that phrase from the claim and substituting for it 'embedded in the table,' the applicant restricted his claim to those combinations in which the conductor means, though carried on the table, is also embedded in it. By the amendment he recognized and emphasized the difference between the two phrases and proclaimed his abandonment of all that is embraced in that difference. Hubbell v. United States, 179 U.S. 77, 83, 21 S.Ct. 24, 26, 45 L.Ed. 95; Weber Electric Co. v. E. H. Freeman Electric Co., 256 U.S. 668, 677–678, 41 S.Ct. 600, 603, 65 L.Ed. 1162; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 440, 444, 47 S.Ct. 136, 140, 141, 71 L.Ed. 335; Smith v. Magic City Kennel Club, 282 U.S. 784, 789, 51 S.Ct. 291, 293, 75 L.Ed. 707; Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132; cf. in case of disclaimer Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 492, 493, 55 S.Ct. 455, 461, 462, 79 L.Ed. 1005. The difference which he thus disclaimed must be regarded as material, and since the amendment operates as a disclaimer of that difference it must be strictly construed against him. Smith v. Magic City

Kennel Club, supra, 282 U.S. 790, 51 S.Ct. 293; Shepard v. Carrigan, 116 U.S. 593, 598, 6 S.Ct. 493, 495, 29 L.Ed. 723; Goodyear Dental Vulcanite Co. v. Davis, 102 U.S. 222, 228, 26 L.Ed. 149."

Under the doctrine of that case and the cases hereinbefore referred to concerning file-wrapper estoppel, the plaintiff is clearly estopped from claiming infringement by the defendant's device.

The plaintiff made some point in argument that the principal advantage of his "arms" or "shoes" was that they fitted into the groove and acted as bearings which would eliminate indentation of the groove by the ball-bearings of the Arthur patent. But that is a result, and the plaintiff patented a thing, not a result.

Plaintiff also asserts that, the court having once denied defendant's motion for summary judgment, such denial is the law of the case. In the first place, this is not a motion for summary judgment, and in the second place, if it were, the court could correct its own errors.

■■ It is true that the motion for summary judgment was denied on March 10, 1958, but it was denied because the court then deemed it necessary, on the motion for summary judgment as made, to pass on the validity of plaintiff's patent, whereas, on the separate trial of file-wrapper estoppel, the validity of plaintiff's patent is not involved, but rather it is presumed to be valid.

Furthermore, the matter of "lost motion," "plate wobble," "hammer blows to the housing," "indenting of the ball raceway," and similar terms used in the description of plaintiff's patent are not involved on the issue of file-wrapper estoppel, whereas their meaning would be involved on the question of validity.

Moreover, the Ninth Circuit has, since the motion for summary judgment was denied in this case, decided the case of Moon v. Cabot Shops, Inc., Sept. 21, 1959, 270 F.2d 539, 545, wherein the court indicated the propriety of first disposing of the question of file-wrapper estoppel

when it was raised, in the following language:

"Although the doctrine of file wrapper estoppel was argued before the district court, that court declined to dispose of the case on that ground. In our view it could have done so. The patentee in this case narrowed his claims in order to escape rejection. By thus limiting his claims, he is estopped to enlarge them by resort to the doctrine of equivalents. D & H Electric Co. v. M. Stephens Mfg. Inc., 9 Cir., 233 F.2d 879, 883–884."

Judgment on the question of file-wrapper estoppel will be for defendant upon preparation of Findings, Conclusions and Judgment under the Local Rules.