**ENGELHARD INDUSTRIES, INC.,**
Plaintiff,

v.

**RESEARCH INSTRUMENT CORPORATION et al., Defendants.**

No. 370-59-PH.

United States District Court
S. D. California,
Central Division.

July 24, 1961.

Elliott & Pastoriza, Santa Monica, Cal., for plaintiff.

Kendrick, Schramm & Stolzy, and Reed C. Lawlor, Los Angeles, Cal., for defendants.

HALL, District Judge.

Plaintiff's Complaint seeks relief on two grounds. The First for patent infringement of U. S. Patent No. 2,805,191 issued on September 3, 1957, the application for which was filed October 4, 1954, and which concerns, in some claims, a method, and in others, an apparatus for the oxygen analysis of gases and measuring it in minute quantities; the Second for unfair competition.

With defendants' Answer, they filed a Counter-claim alleging violation of the Anti-trust laws by the plaintiff, and the resultant damage to the defendants. The Counter-claim has since been dismissed.

Discovery has proceeded actively and vigorously [1] so that in addition to a great number of depositions, there have been interrogatories and requests for

[1]. The briefs and arguments of one of counsel have been replete with acrimony and invectives. I do not wish to be understood as telling any lawyer how he should try his case or what or how he should say what he has to present. But I am sure if counsel knew how distracting such things are when a Judge is trying to follow counsel's reasoning, or analyze his points in a complicated matter, there would be less of it.

**140**

admissions which run into the hundreds, to say nothing of the copious briefs and statements of counsel.

The matter is presently before the Court on a motion by the defendants for summary judgment on the grounds that the pleadings, admissions, the patent in suit, and its File Wrapper will show file wrapper estoppel as to infringement; that the patent, if valid, is uninfringed; that the patent is invalid; and that the plaintiff has no cause of action for unfair competition.

To support such Motion, it must, of course, appear that there is no genuine issue as to any material fact concerned, and that defendants are entitled to judgment as a matter of law. [F.R.Civ.P. 56(c), 28 U.S.C.A.].

File Wrapper Estoppel

The claims of the patent in suit are Numbers 1, 7, 10, 11, 12, 14, 15, 16 and 17.

▮ The matter of file wrapper estoppel is an equitable defense [Aldridge v. General Motors Corp., D.C.1959, 178 F.Supp. 839, and cases there cited]. When raised, it should be disposed of before the other issues are tried. Moon v. Cabot Shops, Inc., 9 Cir., 1959, 270 F.2d 539, 545].

Despite the hundreds of interrogatories, requests for admissions, numerous depositions and the charges and counter-charges which have been contained in the objections to the interrogatories, requests and depositions, and despite the apparent complexity of the pleadings, the device involved is a comparatively simple one, as is frequently the case. It has all of the elements of a common battery used in an automobile, refined, however, to do the particular job of determining the presence of oxygen in gases and measuring it electrically in minute quantities.

Both plaintiff's patent and defendants' device disclose an enclosed area with an electrolyte (electrical conductor), liquid or aqueous in form, an anode (positive pole) completely immersed in the electrolyte, and a cathode (negative pole) only partly immersed in the electrolyte.

The dispute ultimately turns upon the simple question as to whether or not in the claims in suit the portion of the cathode not immersed in the electrolyte must be constructed of an imporous material and in such a fashion as to prevent the electrolyte from "creeping" up the exposed portion of the cathode so as to keep the exposed portion of the cathode free from and not covered by a film of electrolyte, and whether or not defendants' device is so constructed.

A certified copy of the Patent Office file wrapper is before the Court by agreement of the parties, and there is no genuine issue as to its contents.

▮ The defendants' device was before the Court. The affidavit of Reed C. Lawlor described the cathode in defendants' device as consisting of eight members partly immersed in the electrolyte, each of which is composed of folded wire mesh screen portions forming eight double screens, and is so constructed that by means of capillary attraction, the electrolyte creeps up said portions of *each of said eight cathode members* extending above the liquid level of the electrolyte in the pool of electrolyte in defendants' device, so as to *cause a film of electrolyte to cover defendants' cathode*.

While the plaintiff has stated that there is a genuine issue as to the construction of defendants' device and its operation, that is merely a conclusion, and there is no counter-affidavit as to the method of construction or function of defendants' device. Hence, the Court must accept the description of defendants' device, together with viewing the object itself, as being true. There is thus no genuine issue as to the construction or operation of defendants' device. Radio City Music Hall Corp. v. United States, 2 Cir., 1943, 135 F.2d 715; Engl v. Aetna Life etc., 2 Cir., 1943, 139 F.2d 469; Piantadosi v. Lowe's, Inc., 9 Cir., 1943, 137 F.2d 534, 535; Gifford v. Travelers Protective Ass'n, 9 Cir., 1946, 153 F.2d 209; Duarte v. Bank of Hawaii, 9 Cir., 1961, 287 F.2d 51.

▮ The affidavit of Bryan that the Patentee Hersch "made an unequivocal

statement in his presence," to the effect that he considered the oxygen analyzer manufactured by the defendants to be "an infringement" of the patent in suit, raises no genuine issue as to a material fact on the question of file wrapper estoppel, as it is hearsay, and at best, an expression of opinion by Hersch, and an opinion is not a fact. The affidavit of Cohn, an expert, that in his "opinion the oxygen analyzer manufactured by defendants is an infringement" of the patent in suit reaches no fact and creates no genuine issue.

This is particularly so as to the opinions of both Hersch and Cohn because the plaintiff has one of defendants' devices and has operated it (Admissions No. 253 and 263), and had plaintiff desired to, it could have pointed out by affidavit the precise construction and operation of defendants' device which may, or may not, have raised a genuine issue.

 Moreover, by Admissions No. 256 and 257, plaintiff admits that defendants' device uses a wire screen cathode, and that the oxygen contacting the cathode has diffused through the electrolyte to the cathode. The latter is another way of saying that defendants' immersed portion of the cathode is *not "free"* of contact with the electrolyte, as set forth in each of the claims in suit.

The File Wrapper discloses that the original application contained 33 claims —19 method claims, 13 apparatus claims, and one mixed claim.

The Specifications mentioned that the cathode "may take the form of a solid metal element such as sheet, wire, etc., or it may be in the form of gauze, the elements of which are solid silver strands," (Col. 3, *l.* 35) and that the "inner surface of cathode" might be "bright silver gauze." (Col. 7, *l.* 45).

The claims were all very broad and covered an "imporous" cathode (e. g., Claim 10, page 25 of File Wrapper), as well as "a porous carrier material interposed between and in contact with an inert cathode and a metallic anode," (e. g., Claim 13, page 26 of File Wrapper);

"a porous carrier material adopted to be permeated with an aqueous electrolyte and interposed between and in contact with said cathode and said anode." (e. g., Claim 25, page 30 of File Wrapper; see also Claim 26). They were thus broad enough to cover both a cathode, the exposed portion of which was imporous and free from the electrolyte, as well as a screen or porous material between the cathode and the anode which could be permeated with, or covered by, a film of the electrolyte.

The first Patent Office action, on May 9, 1955, disallowed some claims and required restrictions as to others. Amendments were thereupon filed which, in turn, were followed by the Patent Office rejecting all of the claims on June 22, 1955, and stating "since Claims 9, 10 and 22 recite an imporous cathode, these must necessarily read only on Figure 1, the wire being considered porous in the broad sense."

Thereafter, further amendment was filed on December 17, 1956, replacing all of the previous claims with twelve new, method claims, and six new, apparatus claims. All of these claims were rejected as final on February 6, 1957.

Again the applicant, on February 19, 1957, filed eleven new, method claims, and five new, apparatus claims, and "replaced," i. e., cancelled or abandoned his previous claims. And after further amendment on June 27, 1957, they were allowed and became Claims 1 through 17 of the patent as issued on September 3, 1957.

Of the claims in suit, Claims 1, 7, 10, 11 and 17 are method claims, and Claims 12, 14, 15 and 16 are apparatus claims.

The Specifications set forth in the original application for the patent remain and became the specifications in the issued patent. As noted, however, the claims went through a considerable history of change, and it is in connection with these changes and statements made by the applicant to the Patent Office to secure the claims as finally allowed, that the defendants contend the plaintiff is

estopped from claiming infringement by defendants' device.

If this is so, the defendants are entitled to judgment as a matter of law. D. & H. Electric Co. v. M. Stephens Mfg. Co., 9 Cir., 1956, 233 F.2d 879, and cases there cited.

While the plaintiff, in the Specifications for the patent, stated that "the cathode may take the form of a solid metal element such as sheet, wire, etc., or it may be in the *form of gauze, the elements of which are solid strands,*" nevertheless, it is the contention of the defendants that by the cancellation and abandonment of the original claims and by the limitations thereafter placed upon the claims finally allowed, as disclosed by the File Wrapper, patentee limited his claims so as not to include a gauze or screen or porous material either as a cathode or as connecting the cathode and the anode in the device, or in its operation, and limited the claims to a cathode of "imporous" material with a portion "free" of contact with the electrolyte.

In this connection, plaintiff calls attention to Page 47 of the File Wrapper, in a document filed after the rejection of the first set of claims, wherein it is stated that: "It *is an essential* feature of the present invention that a substantial portion of the surface of the cathode be free of any contact with electrolyte in order that *oxygen molecules contained in gas passing over the cathode impinge on the exposed cathode surface directly from the gaseous phase without prior dissolution in the electrolyte.*" (Italics by claimant in File Wrapper).

And again, on the same page: "Moreover, the cathodes employed in accordance with the principles of the present invention should be imporous, i. e., devoid of pores, *to prevent creeping of the electrolyte on or along the exposed cathode surface such that a film of electrolyte would subsequently completely envelope the cathode.* Observance of this feature advantageously assists in *preventing* the occurrence of an *electrolyte film* completely about the cathode surface, and insures the attainment of high sensitivity

and drift-free operation, particularly at low oxygen concentrations." (Italics supplied).

And on Page 54: "Furthermore, *it is essential in accordance with applicant's principles and concepts,* for reasons set forth hereinabove, *that a substantial portion of the surface area of a cathode emerge from and be completely free of electrolyte.*" (Italics by claimant in File Wrapper).

And on Page 55, that plaintiff's embodiment embraces "the utilization of stagnant or substantially stagnant electrolytes to prevent *the creeping thereof along the* exposed cathode surface." (Italics supplied).

Defendants make further reference to the Patent Office Examiner's conclusion of June 22, 1956, in denying all the amended claims (Page 65 of the File Wrapper), that "Since Claims 9, 10 and 22 recite an imporous cathode, they must necessarily read only on figure 1, the wire gauze being considered porous in the broad sense."

It is to be noted that all of the claims in the present patent, except Claim 10, state specifically that the metal cathode is to be "imporous," and that the unimmersed portion be "free" of contact with the electrolyte.

Plaintiff asserts (Page 74 of the File Wrapper), in referring to the best method of carrying out his invention, that "There is a complete description that the cathode is comprised of silver gauze," and on Pages 75 and 76 of the File Wrapper, states: "The sheets, in turn, were clad with the silver gauze cathode." But this was prior to the cancellation of all of those claims by the Patent Office on February 6, 1957, and to the abandonment of those and his previous claims, and the filing of new ones, claiming an "imporous" cathode "free" of the electrolyte, on February 19, 1957, which were finally allowed in the patent.

In re-submitting the claims which were finally allowed (Page 96 of the File Wrapper), plaintiff's counsel, in support of those claims stated: "For example,

each of the new apparatus claims require structural feature of a substantial portion of the cathode employed in accordance with applicant's invention *be free of contact with the electrolyte and that a substantial area of the cathode is exposed to an oxygen-containing gas.*" (Italics by claimant in File Wrapper).

It is also noted (Page 100 of the File Wrapper) that applicant in furtherance of his efforts to secure the finally allowed claims, made the following statements:

"It is likewise to be noted that applicant's requirements are just the *opposite* of those of Haller. Thus, applicant requires a *stagnant* electrolyte whereas Haller requires an electrolyte which '*bleeds through* the porous tubular section.' Applicant must maintain a *partially submerged* area on the cathode whereas Haller must maintain a *film* of solution on his porous section *completely* submerging his electrode. In lines 42 to 45 of column 2, Haller states that:

" 'a film of solution is at all times maintained on the outside of the porous section in contact with the platinum electrode.'

"In lines 45 to 48 of column 2, Haller also states that:

" 'When the gas mixture comes into contact with the *film* of electrolyte, the oxidizing or reducing gas dissolves reversibly therein * * *.'

"Furthermore, Haller states in the passage beginning with lines 54 and 55 of column 2 and ending at line 5 of column 3 that:

" 'if the rate of flow of solution through the porous tube is insufficient to maintain the external solution *film,* the electrode may be externally washed with water or a suitable solution at a low rate sufficient only to maintain the solution *film* and avoid crystallization.'

"Applicant's anode must be attacked by his electrolyte in the presence of *uncombined* oxygen whereas Haller's electrodes must *not* be attacked. Thus, Haller specifies in lines 15 and 16 of column 3 that:

" 'It is only necessary that the electrolyte does not chemically attack either of the electrodes * * *.' "

(Italics by claimant in File Wrapper).

The question to be resolved then is whether or not the statements by the patentee in the Specifications that the cathode may be a form of gauze is sufficient to permit his allowed claims to cover the gauge or wire screen admittedly used by defendants as a cathode.

In view of the repeated statements by the patentee throughout the File Wrapper, as above noted, that his invention conceived that the unimmersed sections of the cathode should be free from creeping of the electrolyte so as to prevent the forming of a film of the electrolyte on it, and in view of the construction and operation of defendants' device as above noted, I can see no other conclusion to be reached than that plaintiff is estopped to now assert that his claims cover the very thing which he so emphatically asserted to the Patent Office was not desired and was not claimed in his invention, and that there is no genuine issue of any material fact supporting such estoppel.

While Claim 10 of the patent did not claim an "imporous" cathode, it did claim that a portion of it must be "free of contact" with the electrolyte. Thus the estoppel applied against the other claims must equally apply to it. Particularly so, in view of the assertions hereinabove quoted from the File Wrapper. The unimmersed portion of the cathode cannot be "free of contact" with the electrolyte if it is covered with a film of the electrolyte creeping up the cathode from the main body of the electrolytic fluid.

In arriving at the foregoing conclusion, the Court has taken into consideration only the pleadings; the patent in suit; it's file wrapper; the defendants' device, auto-optically; plaintiff's admissions

numbered 253, 256, 257, 263; the affidavits of Lawlor, Bryan and Cohn; and the numerous statements, arguments and briefs of counsel. All of the other ponderous matter submitted by the parties is irrelevant and immaterial on the issue of file wrapper estoppel.

### Other Grounds of Infringement

In view of the fact that plaintiff could only recover if there is infringement by defendants, and that the plaintiff is estopped from claiming infringement by the defendants in this case, the issue as to validity of the patent becomes moot, and upon presentation of a formal judgment, that claim will be dismissed.

### Unfair Competition

In The American Securit Co. v. Shatterproof Glass Corp., D.C.Del. 1958, 166 F.Supp. 813, affirmed 3 Cir. 1959, 268 F.2d 769, certiorari denied 1959, 361 U.S. 902, 80 S.Ct. 210, 4 L.Ed. 2d 157, rehearing denied 1960, 361 U.S. 973, 80 S.Ct. 584, 4 L.Ed.2d 553, the court granted summary judgment on the infringement claims and on the pendant unfair competition claims. And in connection with the latter said, at page 826 of 166 F.Supp.:

"Since it has been adjudged that plaintiff cannot enforce its patents against [the] defendant, it is clear that defendant's alleged deception constituted no actionable wrong. Unless plaintiff was legally entitled to enforce its patents against the defendant[s], defendant's alleged guile in inducing plaintiff to forbear action constituted no invasion of any right possessed by plaintiff."

The portion of the Trial Court's opinion dealing with the dismissal of the unfair competition claims in that action was adopted by the Third Circuit Court of Appeals—268 F.2d 769, at page 779.

In the instant suit, plaintiff cannot enforce its patent against defendants, and hence plaintiff has no actionable wrong for the alleged unfair competition.

On that basis, and no other, defendants are entitled to a judgment of dismissal as to plaintiff's claims of unfair competition.

In view of the foregoing conclusions, the proposed Findings of Fact and Conclusions of Law submitted by the defendants are inapposite.

The within Memorandum will serve as Findings of Fact and Conclusions of Law, but not as a judgment. A formal judgment will be prepared and submitted for signature by defendants' counsel, under the Rules.