CATAPHOTE CORPORATION, Plaintiff,

v.

DeSOTO CHEMICAL COATINGS, INC., Defendant.

No. 40985.

United States District Court
N. D. California, S. D.

May 19, 1964.

See also, 235 F.Supp. 936.

Merriam, Smith & Marshall, Chicago, Ill., and Lerer & Moltzen, San Francisco, Cal., for plaintiff.

McDougall, Hersh & Scott, Chicago, Ill., and Hoppe & Mitchell, San Francisco, Cal., for defendant.

SWEIGERT, District Judge.

The issue presently before the Court in this patent litigation is raised by defendant's motion for a separate trial (Rule 42[b], Fed.R.Civ.P., 28 U.S.C.) on the issue whether plaintiff's alleged invention is invalid because placed in public use or on sale in this country more than one year prior to the date of application for said patent within the meaning of 35 U.S.C. § 102(b).

Defendant's motion is based upon Plaintiff's Answers to Interrogatories of Defendant filed November 20, 1962 and January 31, 1963; Plaintiff's Answers to Defendant's Request for Admissions, filed March 7, 1963; Defendant's Motion and Points and Authorities, filed December 23, 1963; defendant's Points and Authorities filed January 31, 1964; and depositions of Poole, Christie, W. H. Searight and C. E. Searight, which have been lodged but not filed with the Court, and defendant's Closing Brief, filed February 26, 1964. Plaintiff filed briefs in opposition January 15, 1964 and February 10, 1964.

In support of its motion, defendant states that its discovery thus far has established the following facts:

In September, 1955, plaintiff Cataphote employed the Arthur D. Little Company of Cambridge, Massachusetts, to engage in research looking to the de-

velopment of a light-reflective, thermoplastic composition to be used in marking highways. The Arthur D. Little Company employed John A. Poole to work on the project. During the remainder of 1955 and prior to November 12, 1956, the Arthur D. Little Company on several occasions sent to Cataphote large quantities of a thermoplastic composition which embodied a formula developed by Poole. Cataphote arranged to have several hundred pounds of said composition laid down on public highways in various cities throughout the United States.

The patent at issue consists of the above-mentioned Poole thermoplastic composition and its method of application.

On three specific occasions, in May and June, 1956, Cataphote sold the Poole composition to the cities of Grand Rapids, Lansing and Jackson, Michigan. In connection with said sales, Cataphote issued regular invoices and received payments. In addition, Cataphote paid its salesman Reed a commission for said sales.

Thomas B. Christie, former manager of sales and promotions for Cataphote, installed the patented combinations in the three above-mentioned cities. He testified at his deposition taken November 19, 1963, that the installations were "demonstrations" and "experimental" applications in order to determine how the Poole combination would stand up under normal public use. However, Christie also testified that he did not make a subsequent re-examination of the installations he had laid down and that he did not know if anyone from Cataphote had made such a subsequent examination. Further, William H. Searight, who was president of Cataphote at that time, testified in his deposition taken November 19, 1963, that he did not directly inspect the traffic lines after their installation in Grand Rapids, Lansing or Jackson.

However, Charles E. Searight, presently the president of Cataphote, testified at his deposition taken November 19, 1963, that he received oral reports concerning the installations in Grand Rapids and Lansing. As a result of said reports, Cataphote replaced one installation at no cost and gave a credit for the charge incurred in the other installation, which was not replaced. Charles E. Searight further testified that Cataphote communicated the information obtained from these reports to Poole by forwarding said information to the Arthur D. Little Company. Charles E. Searight also testified that there was no follow-up after the Jackson installation.

Poole testified at his deposition taken November 18, 1963 that he did not know of any installations of his invention in Grand Rapids, Jackson or Lansing.

Under 35 U.S.C. § 102(b) a person is not entitled to a patent where the invention was in public use or on sale in this country more than one year prior to the date of the application for patent in the United States. Defendant concedes for the purposes of its motion that the date of plaintiff's application was November 12, 1957. However, defendant contends that the evidence which it has discovered is to the effect that plaintiff's patent was on sale or in public use prior to November 12, 1956. In addition to the Lansing, Grand Rapids and Jackson sales set forth in defendant's depositions, defendant relies on other sales and conduct of plaintiff (e. g., fact that Cataphote on July 23, 1956, filed its application for the trademark "Thermaline" for the Poole combination, in which application Cataphote claimed that the combination had been in continuous use since June 14, 1956) which is not set forth by affidavit, deposition or otherwise factually in the record presently before the Court.

■■ Plaintiff contends that any use or sale of the patented combination prior to November 12, 1956 was experimental. An exception to the requirement of seasonable disclosure of new inventions set forth in 35 U.S.C. § 102(b) occurs in those situations in which the use in question is of an experimental nature. An inventor, once he has conceived his invention, is accorded sufficient time to perfect his invention. During this period, the time that elapses is not computed as

934

part of the one year requirement of 35 U.S.C. § 102(b). City of Elizabeth v. American Nicholson Pavement Co., 97 U. S. 126, 24 L.Ed. 1000 (1878); Electric Storage Battery Co. v. Shimadzu, 307 U. S. 5, 613, 616, 59 S.Ct. 675, 83 L.Ed. 1071 (1939); Atlas v. Eastern Air Lines, Inc., 311 F.2d 156 (1st Cir. 1962), cert. den. 373 U.S. 904, 83 S.Ct. 1290, 10 L.Ed.2d 199 (1962); Ushakoff v. United States, 327 F.2d 669 (Ct.Cl.1964). This exception applies even where the experimental use results in an incidental profit to the inventor. However, the exception does not apply where the use is mainly for the purposes of trade and profit, and the experiment is merely incidental to that end. Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 256, 8 S.Ct. 122, 31 L.Ed. 141 (1887).

Defendant contends that plaintiff's conduct does not come within the exception for experimental use. Defendant points out that the president of Cataphote conceded that there was no follow-up to the Jackson installation. Defendant contends that Cataphote treated the Grand Rapids and Lansing sales as complete by replacing one defective marking and giving credit for another. None of the contemporaneous invoices executed by Cataphote in the Lansing, Grand Rapids and Jackson sales used the word "experimental" or "proforma" to indicate that the sale was not an ordinary business transaction. Cataphote did not directly inform Poole of the installations or the test results of said installations, notwithstanding the fact that the justification for the experimental use exception is to allow the inventor to perfect his invention.

Thus, should the Court grant a separate trial, the issue before the Court would be whether Cataphote placed the patented combination on sale or in public use in Grand Rapids, Lansing or Jackson, Michigan, or in any other area, prior to November 12, 1956, and, if so, whether such sales or uses qualify under the experimental use exception.

■ Under Rule 42(b), Fed.R.Civ.P., 28 U.S.C., the Court in furtherance of convenience or to avoid prejudice may order a separate trial of any issue. Generally, a separate trial should not be granted unless the issue is clearly severable from the other issues in the case and does not involve the same evidence. 5 Moore, Federal Practice, Sec. 4203 at 1217 (2d ed. 1951).

■ Plaintiff contends that in the case at bar the issue whether a particular use of the patented combination by Cataphote was an experimental use is related, not only to the issue of the application of Section 102(b), but also to the issue of invention. The date of invention is fixed when the alleged inventor's ideas are reduced to practice. Consolidated Vultee Aircraft Corp. v. Maurice A. Garbell Inc., 204 F.2d 946, 949 (9th Cir. 1953), cert. denied 346 U.S. 873, 74 S.Ct. 122, 98 L.Ed. 381 (1953); Hann v. Venetian Blind Corp., 111 F.2d 455, 458 (9th Cir. 1940).

■ However, the test for establishing a reduction to practice is different than the test for establishing an experimental use. To establish a reduction to practice of the inventor's idea, there must be a demonstration that the inventor's idea works; in other words, that the invention will perform in a manner which will accomplish its intended purpose. RCA v. International Standard Elec. Corp., 232 F.2d 726, 730 (3rd Cir. 1956). To establish an experimental use, there must be a demonstration that the use was substantially for the purpose of experiment. Smith & Griggs Mfg. Co. v. Sprague, supra, 123 U.S. at 256, 8 S.Ct. 122. Thus, there may be an experimental use even following reduction to practice where the experiments are part of an attempt to further refine the device. Atlas v. Eastern Air Lines, Inc., supra, 311 F.2d at 162; General Motors Corp. v. Bendix Aviation Corp., 123 F. Supp. 506, 520 (N.D.Ind.1954).

It may be that Cataphote will attempt to show that the purpose of a particular alleged public use or sale was experimental by evidence to the effect that said use or sale was part of the process of reduction to practice. On the other hand,

defendant may attempt to show that the inventor's idea had already been reduced to practice at the time of the alleged public use or sale.

■ However, the door will not be open wide on the issue of reduction to practice should the Court grant a separate trial. The issue of reduction to practice would be relevant only to show the purpose of a particular use or sale

In Woburn Degreasing Co. v. Spencer Kellogg & Sons, 37 F.Supp. 311 (W.D. N.Y.1941), the Court granted a separate trial on the issue whether the patented process at issue was invalid because it had been patented in a foreign country pursuant to an application filed more than one year prior to the application in the United States, notwithstanding the fact that there would be some duplication of proof concerning the prior art.

■ A motion for separate trial under Rule 42(b) is directed to the discretion of the Court. On the one hand, the Court is aware of the policy against piece-meal litigation and is reluctant to sanction a shot-gun approach by defendant, in which defendant would be encouraged to try out each new theory of defense as it developed through discovery. On the other hand, defendant has made a strong showing of the existence of a defense of prior public use or sale. Merely a single instance of such a prior public use or sale would be fatal to the patent. Consolidated Fruit-Jar Co. v. Wright, 94 U.S. 92, 94, 24 L.Ed. 68 (1876).

■ Further, in order to sustain his burden of proving a "public use" within the meaning of Section 102(b), defendant must offer evidence that "shall be clear, satisfactory, and beyond a reasonable doubt." The Barbed Wire Patent, 143 U.S. 275, 284, 12 S.Ct. 443, 447, 36 L.Ed. 154 (1892). However, once a prima facie demonstration of the claimed use has been made, Cataphote would have to demonstrate by "strong and convincing proof" that the use was substantially for experimental purposes. Atlas v. Eastern Air Lines, Inc., supra, 311 F.2d at 160.

In other patent cases, the Courts have ordered collateral defensive issues to be tried separately in advance of the issues of patent validity and infringement.

In Aldridge v. General Motors Corp., 178 F.Supp. 839 (S.D.Calif.1959), the Court separately tried, following a motion under Rule 42(b), the issue of file wrapper estoppel in a patent infringement suit.

In Seven-Up Co. v. O-So Grape Co., 177 F.Supp. 91 (S.D.Ill.1959), affirmed 283 F.2d 103 (7th Cir. 1960), cert. denied 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed. 2d 859 (1960), the Court ordered the issue of laches tried separately from the issues of trademark infringement and unfair competition. See also Air King Products Co. v. Hazeltine Research, 10 F.R.D. 381 (E.D.N.Y.1950) (issue of estoppel based upon license agreement separately tried from the issue of validity of 550 patents).

■ In the case at bar, should the case turn upon the comparatively simple issue of public or experimental use or sale, the Court and the parties would be saved from the necessity of determining the more complex issues of patent validity and infringement. Defendant has already made a prima facie showing of public use or sale. On the other hand, should the Court order a separate trial and the defendant not prevail on the issue of public sale or use, the inconvenience to the Court and the parties would not be great, because defendant would have been entitled to raise that defense in any event during the trial and, further, because the amount of evidence on experimental use which also goes to the issue of reduction to practice is not great.

Further, any inconvenience to the plaintiff resulting from any undue delay by the defendant following the separate trial, should plaintiff prevail on the separate trial, can be avoided by conditioning the granting of defendant's motion on a stipulation by defendant that it

would be ready to proceed to the trial of the case in chief within a reasonable time.

Accordingly, the Court orders that defendant's motion for separate trial on the issue whether plaintiff's alleged invention is invalid because placed in public use or on sale in this country more than one year prior to the date of application for said patent within the meaning of 35 U.S.C. § 102(b) will be granted upon the filing by defendant with the Court of a written stipulation to the effect that defendant will be ready to proceed to the trial in chief, should plaintiff prevail in the separate trial, within sixty days of the decision of the Court in the separate trial.

This case has been assigned to this Court for all further proceedings. Accordingly, the parties will file pre-trial statements on the above issue and apply to the Court for a date for trial within a reasonable time.

It is so ordered.